# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD., | )<br>)<br>) |
| Plaintiff, | )<br>) Case No.: 18-cv-00825 |
| v. | )<br>) Jury Trial Demanded |
| CONTEC MEDICAL SYSTEMS USA INC. and CONTEC MEDICAL SYSTEMS CO., LTD., | )<br>)<br>) |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Beijing Choice Electronic Technology Co., Ltd. ("Choice") for its Complaint against Defendants Contec Medical Systems USA Inc. ("Contec U.S.") and Contec Medical Systems Co., Ltd. ("Contec China") (collectively, "Contec"), alleges as follows:

1. This is an action for patent infringement that arises out of Contec's infringement of U.S. Patent No. 8,639,308 (the "'308 patent") relating to fingertip pulse oximeters and methods for updating the display mode of fingertip pulse oximeters.

2. Plaintiff Choice is a corporation organized and existing under the laws of the People's Republic of China, having its headquarters and principal place of business at 4th Floor, Jingyang Building, No. 15 Xijing Road, Shijingshan, Beijing, People's Republic of China.

3. Plaintiff manufactures and sells fingertip pulse oximeters that embody the '308 patent (the "Patented Oximeters"), including its C2 Series fingertip pulse oximeters, such as model numbers C29 and C2A.

4. On information and belief, Defendant Contec U.S. is a corporation organized under the laws of Illinois, having its headquarters and principal place of business at 111 Wheeling Road, Wheeling, Illinois, United States of America and/or 1440 Chase Avenue, Elk Grove Village, Illinois, United States of America.

5. On information and belief, Defendant Contec China is a corporation organized under the laws of the People's Republic of China, having its headquarters and principal place of business at No. 112 Qinhuang West Street, Economic and Technical Development Zone, Qinhuangdao, People's Republic of China.

6. On information and belief, Contec U.S. was established by and is a fully owned subsidiary of Contec China, and Contec U.S.'s primary business is selling, distributing, and promoting the sale and distribution of Contec China's products. On information and belief,

Contec U.S.'s board of directors almost entirely consists of board members or employees of Contec China.

## JURISDICTION AND VENUE

7. Plaintiff repeats and incorporates by reference paragraphs 1-6 above as though fully restated herein.

8. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq., including 35 U.S.C. § 271.

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. On information and belief, Contec regularly transacts business in a substantial, continuous, and systematic way within the state of Illinois and the Northern District of Illinois, including, but not limited to, the storage, distribution and sales of products and the offering of support and services that give rise to the instant action for patent infringement.

11. On information and belief, Contec China manufactures products that infringe the '308 patent, imports them into the Unites States, and provides them to Contec U.S. in the state of Illinois and other distributors and retailers within the United States, for storage, sales, distribution, and/or sales within the United States, the state of Illinois, and the Northern District of Illinois.

12. On information and belief, Contec maintains offices and facilities within the state of Illinois and the Northern District of Illinois, specifically including, but not limited to, an office located in Wheeling, Illinois and/or an office located in Elk Grove Village, Illinois, from which infringing products are stored, offered for sale and sold. On information and belief, Contec

2

employs Illinois residents, including residents of this judicial district who work at Contec's office(s) in Wheeling, Illinois and/or Elk Grove Village, Illinois.

13. On information and belief, Contec has placed infringing products, including fingertip pulse oximeters that form the basis of this Complaint, into the stream of commerce with the expectation that such products will be purchased within the United States, the state of Illinois, and the Northern District of Illinois.

14. On information and belief, Contec is engaged in the manufacture, distribution, and sales of fingertip pulse oximeters throughout the world, including substantial sales within the United States, the state of Illinois, and the Northern District of Illinois.

15. On information and belief, Contec has offered for sale and sold within the United States, the state of Illinois, and the Northern District of Illinois fingertip pulse oximeters that practice and thereby infringe the '308 patent.

16. On information and belief, Contec offers for sale and sells within the United States, the state of Illinois, and the Northern District of Illinois fingertip pulse oximeters that practice and thereby infringe the '308 patent.

17. On information and belief, Contec and its end users have, within the United States, the state of Illinois, and the Northern District of Illinois, used fingertip pulse oximeters in a manner that practices and thereby infringes the '308 patent.

18. On information and belief, Contec U.S. is subject to personal jurisdiction in this Court for at least being incorporated and having a principle place of business in the State of Illinois.

19. On information and belief, Contec China is subject to personal jurisdiction in this Court, consistent with the principles of due process and the Illinois Long Arm Statute, by virtue

of Contec China's above-referenced activities and contacts within the state of Illinois and the Northern District of Illinois, and further because Contec China purposefully availed and avails itself of the privileges of doing business in Illinois.

20. On information and belief, a substantial part of the acts giving rise to the instant action occurred in the state of Illinois and the Northern District of Illinois.

21. Venue in this Court is proper under 28 U.S.C. §§ 1391(b)-(d) and 1400(b) at least because Contec U.S. is an Illinois corporation and Contec China is a foreign corporation.

## FACTUAL BACKGROUND

22. Plaintiff repeats and incorporates by reference paragraphs 1-21 above as though fully restated herein.

23. Plaintiff owns the '308 patent, entitled "Fingertip Oximeter and a Method for Observing a Measurement Result Thereon" (attached as Exhibit A), a patent duly and properly issued by the United States Patent and Trademark Office on January 28, 2014.

24. Plaintiff has owned the '308 patent throughout the period of Contec's infringing acts, still owns the patent, and has the right to pursue the claims of infringement and requests for relief set forth in this Complaint, from the time of Contec's first infringement of the '308 patent forward.

25. Contec has directly infringed, induced others to infringe, and/or contributed to the infringement of the '308 patent, by using, offering to sell, and/or selling in the United States, and/or importing into the United States, products that infringe the '308 patent; by practicing one or more inventions claimed in the '308 patent; and by inducing or contributorily causing others to infringe the '308 patent.

4

26. Contec imports into the United States and offers for sale, sells, and uses in the United States at least its fingertip pulse oximeters model numbers CMS50D, CMS50D+, CMS50E, CMS50H, CMS50N, and CMS50QB and separately branded OEM pulse oximeters equivalent to these models (collectively, the "Infringing Oximeters"). Contec's importation into and offer for sale, sale, and use in the United States of the Infringing Oximeters constitute acts of direct infringement of the '308 patent.

27. Contec sells the Infringing Oximeters to third-party distributors and retailers in the United States. These distributors and retailers in turn offer for sale and sell the Infringing Oximeters to third-party end users in the United States. The distributors, retailers, and end users in the United States use the Infringing Oximeters. These activities undertaken by the distributors, retailers, and end users constitute direct infringement of the '308 patent.

28. The Infringing Oximeters are known by Contec to be especially made or especially adapted for use in infringement of the '308 patent and are not staple articles or commodities of commerce suitable for substantial noninfringing use. Contec's sale of the Infringing Oximeters to distributors and retailers and eventually end users has therefore contributed to and continue to contribute to the infringement of the '308 patent.

29. Contec's sale of the Infringing Oximeters to distributors and retailers and eventually end users has also induced and continue to induce acts by distributors, retailers, and end users that Contec know or should have known constitute direct infringement of the '308 patent. Contec actively induce infringement of the '308 patent by designing Infringing Oximeters such that they infringe the '308 patent and by directing, promoting, and encouraging the use of its Infringing Oximeters by distributors, retailers, and end users in ways that infringe the '308 patent.

30. Contec's infringement of the '308 patent has been and is willful, deliberate, and in disregard of Choice's patent rights, and Choice is therefore entitled to increased damages up to three times the amount of actual damages and attorneys' fees pursuant to 35 U.S.C. §§ 284, 285.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,639,308**

31. Plaintiff repeats and incorporates by reference paragraphs 1-30 above as though fully restated herein.

32. Each of the Infringing Oximeters or the operation of the same infringes at least independent claims 1 and 4 of the '308 patent. As described below as an example, Contec's fingertip pulse oximeter model number CMS50D and the operation of the same infringe independent claims 1 and 4 of the '308 patent. The remaining Infringing Oximeters infringe the '308 patent in substantially the same way.

33. Contec's CMS50D oximeter is capable of updating a current display mode while it is in use. The current display mode shows a measurement result, as shown in the figure below, excerpted from Appendix 1 (manual for CMS50D) to Exhibit B (declaration of Michael Liu Su) at Section 6 (Figure 4).



Figure 4 Front view

(Ex. B, App'x 1 at § 6 (Fig. 4).) Appendix 2 (operation video of the CMS50D) at 00:20 (shown below) shows the CMS50D's current display mode illustrating the measurement result.

6



(Ex. B, App'x 2 at 00:20.)

34. The measurement result includes measurement parameters (*See, e.g.*, Ex. B, App'x 1 at § 7 ("SpO$_2$" and "PRbmp" in Fig. 10); Ex. B, App'x 2 at 00:20 ("97" and "82").) The measurement parameters are displayed in a portrait left laying way, as claimed in the '308 patent. (*Compare* Ex. B, App'x 2 at 00:20 *with* '308 patent Fig. 1D (both shown below).)



(Ex. B, App'x 2 at 00:20.)



('308 patent Fig. 1D (showing display in a portrait left laying way).)

35. A user updates the CMS50D's current display mode by pressing the power button, which is detected by CMS50D as a user instruction. Appendix 2 to Exhibit B at 00:23 (shown below) shows the user pressing the power button to update the current display mode.

7



(Ex. B, App'x 2 at 00:23.)

36. The button for updating the CMS50D's current display mode is the power button (*see* Appendix 1 to Exhibit B at Section 6 (Figure 4)), which controls a power source of the fingertip oximeter. Appendix 2 to Exhibit B at 00:06 shows that the user can turn on the CMS50D by pressing the power button.



(Ex. B, App'x 2 at 00:06.)

37. When the user presses the power button while the CMS50D is in use, the CMS50D accordingly generates a new display mode to display the measurement result. The CMS50D user manual (Appendix 1 to Exhibit B) at section 7 states: "Press the button shortly when the device is power on, the display mode will change . . . ." The CMS50D operation video (Appendix 2 to Exhibit B) at 00:25 (shown below) shows a new display mode to display the measurement result after the user presses the power button.

8



(Ex. B, App'x 2 at 00:25.)

38. The generation of the new display mode is achieved through the CMS50D's central processor, which is used to display information on the CMS50D.



(Ex. B, App'x 3 (photograph of disassembled CMS50D) (showing central processor).)

39. The CMS50D operation video (Appendix 2 to Exhibit B) at 00:25 shows that the new display mode displays the measurement parameters in a different way—portrait right laying way—than the current display mode. (*Compare* Ex. B, App'x 2 at 00:25 *with* '308 patent Fig. 1B (both shown below).) Appendix 2 to Exhibit B at 00:25 shows that the new display mode is in place of the current display mode

9



(Ex. B, App'x 2 at 00:25.)



('308 patent Fig. 1B (showing display in a portrait right laying way).)

40. In addition to directly infringing the '308 patent, as described above, Contec has indirectly infringed and continues to indirectly infringe at least independent claims 1 and 4 of the '308 patent, via both contributory and induced infringement.

41. Contec knew or should have known of the '308 patent. For example, the '308 patent claims priority to U.S. Patent No. 8,185,179 (the "'179 patent") (attached as Exhibit C). U.S. Patent No. 9,474,477 (the "'477 patent") (attached as Exhibit D), which is assigned to Contec China and directed to a pulse oximeter, lists the '179 patent under the "References Cited" section on the face of the '477 patent.

42. The '179 patent was not only cited during the prosecution, but relied on by the Patent Office as the primary reference to reject the then-pending claims of the '477 patent. During prosecution of the '477 patent, the examiner repeatedly cited the '179 patent's disclosure—which is the same as the '308 patent's disclosure—as the basis for rejecting the then-pending claims of the '477 patent. (Ex. E ('477 patent prosecution history) July 29, 2015

Office Action at 3, Mar. 7, 2016 Office Action at 3, July 20, 2016 Office Action at 2.) In response to the rejections, Contec China repeatedly attempted to distinguish the then-pending claims of the '477 patent with the '179 patent's disclosure. (Ex. E Nov. 30, 2015 Amendment and Response to Office Action at 6, July 1, 2016 Amendment After Final at 6, Aug. 5, 2016 Preliminary Amendment at 5.)

43. Because Contec directly and actively competes with Choice in the fingertip pulse oximeter market, Contec knows of or should have known of the '308 patent by knowing of the '179 patent during prosecution of the '477 patent, all of which relate to fingertip pulse oximeters.

44. With knowledge of the '308 patent, Contec has willfully and directly infringed the '308 patent, both literally and under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States, products, or by practicing processes, that are covered by one or more claims of the '308 patent.

45. Upon information and belief, third parties also infringe the '308 patent. For example, the use by the end users of the Infringing Oximeters also constitutes infringement of at least independent claims 1 and 4 of the '308 patent. Each of the Infringing Oximeters or the operation of the same infringes at least independent claims 1 and 4 of the '308 patent. When the Infringing Oximeters are sold to and used by end users, those end users infringe at least independent claims 1 and 4 of the '308 patent by using the Infringing Oximeters.

46. Contec specifically intends that third parties, including the end users, infringe the '308 patent. Contec induces infringement by the end users at least by providing product support that instructs users on how to use Infringing Oximeters in an infringing manner. For example, the manuals of the Infringing Oximeters inform the end users how to update the current display mode of the fingertip oximeters, as the '308 patent claims. (*See, e.g.*, Ex. B, App'x 1 at § 7.)

Despite Contec's knowledge that the end users will necessarily infringe the '308 patent when the Infringing Oximeters are used as instructed, Contec continues to induce infringement by the end users through the sale of the Infringing Oximeters.

47. Contec also sells and offers for sale the Infringing Oximeters to contributorily infringe the '308 patent. For example, Contec sells the Infringing Oximeters, which have no substantial noninfringing uses. Upon information and belief, the Infringing Oximeters are especially made and/or adapted for use in an infringing manner because they cannot be used in a noninfringing manner. The Infringing Oximeters are not staple articles or commodities of commerce suitable for substantial noninfringing use.

48. Contec has engaged and continues to engage in willful and deliberate infringement of the '308 patent. Upon information and belief, Contec knew or should have known of the '308 patent. Despite this knowledge, Contec continues to make, use, offer for sale, or import Infringing Oximeters and have not contacted Choice to request a license or authorization to use the '308 patent.

49. Contec's willful and deliberate infringement of the '308 patent is further evidenced by the similarity between the Patented Oximeters and the Infringing Oximeters, examples of which are shown below.



(Ex. B, App'x 4.)

Contec willfully and deliberately designed its Infringing Oximeters to not only infringe the '308 patent, but also to mimic the shape and design of Choice's Patented Oximeters, to directly compete with the Patented Oximeters in the United States market.

50. Contec has profited through its infringement of the '308 patent, while Plaintiff has suffered and will continue to suffer losses and damages.

51. As a consequence of Contec's infringement, Plaintiff has been damaged in an amount not yet determined.

52. As a consequence of Contec's infringement, Plaintiff is entitled to awards of damages and reasonable attorney and expert fees and costs.

53. Contec's egregious and willful conduct justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284, and further qualifies this action as an exceptional case supporting an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

54. Plaintiff will suffer and is suffering irreparable harm from Contec's infringement of the '308 patent. Plaintiff has no adequate remedy at law and is entitled to a preliminary and permanent injunction against Contec's continuing infringement of the '308 patent. For example, Contec offers its Infringing Oximeters at a lower price than that of Plaintiff's Patented Oximeters. To prevent losing market share to Contec, Plaintiff has been forced to continuously reduce the prices of its Patented Oximeters. Facing Contec's erosion on price, Plaintiff was sometimes unable to match the low prices of the Infringing Oximeters and therefore lost sales from long-time customers. Reduced prices, together with reduced sales, have dramatically lowered Plaintiff's revenue. Plaintiff's goodwill is also harmed. Customers who turn away from Plaintiff could often see Plaintiff as uncompetitive or unwilling to cooperate in pricing

negotiations. Contec's continued infringement will cause Plaintiff to suffer irreparable losses in business, employees, reputation, and goodwill that can never be regained.

55. On information and belief, unless enjoined, Contec will continue its infringing conduct.

56. A motion for preliminary injunction and a memo in support of the same will soon be submitted.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Judgment that the '308 patent is valid and enforceable;

B. Judgment that Contec has infringed and is infringing one or more claims of the '308 patent;

C. Entry of a preliminary and permanent injunction pursuant to 35 U.S.C. § 283 and Rule 65 of the Federal Rules of Civil Procedure, enjoining Contec and its officers, agents, attorneys, and employees, and those acting in privity or concert with them, from any further acts of infringement until the expiration of the '308 patent or until such later date as the Court may determine;

D. Judgment awarding Plaintiff damages, in the form of lost profits, or in the alternative, not less than a reasonable royalty, together with prejudgment and postjudgment interest;

E. Judgment that this case is exceptional and awarding Plaintiff its attorney fees, expert expenses, and costs, in accordance with 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil Procedure; and

F. Awards of any further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on any and all issues properly so triable.

Respectfully submitted,

Dated: January 31, 2018

*/s/ Steven P. Mandell*
Steven P. Mandell
Stephen J. Rosenfeld
MANDELL MENKES LLC
One North Franklin Street, Suite 3600
Chicago, IL 60606
Phone: (312) 251-1001
smandell@mandellmenkes.com

Kathleen A. Daley (*pro hac vice* pending)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001
Phone: (202) 408-4000
Fax:    (202) 408-4400
kathleen.daley@finnegan.com

Michael Liu Su (*pro hac vice* pending)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
3300 Hillview Avenue, Second Floor
Palo Alto, CA 94304
Phone: (650) 849-6600
Fax:    (650) 849-6666
michael.liu.su@finnegan.com

*ATTORNEYS FOR PLAINTIFF
BEIJING CHOICE ELECTRONIC
TECHNOLOGY CO., LTD.*