# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | No. 18 C 0825 |
| v. | ) ) | Judge Sara L. Ellis |
| CONTEC MEDICAL SYSTEMS USA INC. and CONTEC MEDICAL SYSTEMS CO., LTD., | ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Beijing Choice Electronic Technology Co., Ltd. ("Choice") accuses Defendants

Contec Medical Systems USA Inc. ("Contec USA") and Contec Medical Systems Co. Ltd.

("Contec China") (collectively, "Contec") of infringing a patent that relates to fingertip pulse

oximeters and methods for updating the display mode of fingertip pulse oximeters. After the

Court construed the patent's disputed claim terms, Choice asked Contec to supplement its

responses to certain interrogatories that purportedly relate to damages. Choice also noticed the

individual deposition of Tianbao Li, who, according to Choice, is Contec's manager of sales and

foreign trade and Contec's most knowledgeable damages witness. Contec refused to provide the

written discovery requested by Choice and objected to making Li available for deposition.

Choice now moves to compel Contec to provide this discovery, as well as documents it says are

associated with the interrogatories at issue. Choice also moves for leave to file its reply brief in

support of its motion to compel under seal.[1]

---

[1] The parties filed their briefs and exhibits under seal. If the Court refers to a sealed document, it attempts to do so without revealing any information that could be reasonably deemed confidential. Nonetheless, if the Court discusses confidential information, it has done so because it is necessary to explain the path of

The Court grants Choice's motion for leave to file its reply brief under seal. The Court also grants Choice's motion to compel Contec to make Li available for deposition in his individual capacity and Choice's motion to compel Contec to provide supplemental responses to Interrogatories Nos. 3, 10, 12, 15, and 27 in accordance with this opinion. But the Court denies Choice's motion to compel Contec to provide a supplemental response to Interrogatory No. 4, and it denies as moot Choice's motion to compel Contec to provide supplemental responses to Interrogatories Nos. 23 and 24. The Court also denies Choice's motion to compel Contec to supplement its document production in response to Document Requests Nos. 26, 28, 31, and 45. In setting the dates for Li's deposition and Contec's supplementation, the Court expects the parties to work together to account for and accommodate any disruptions, restrictions, and delays that may be caused by the ongoing global coronavirus pandemic.

## BACKGROUND

Under the Local Patent Rules, fact discovery ends 28 days after the parties exchange their lists of claim terms and phrases that they contend must be construed. N.D. Ill. LPR 1.3, 4.1. Upon entry of a claim construction ruling, fact discovery may resume; if it does, it ends 42 days after the claim construction ruling. N.D. Ill. LPR 1.3. But fact discovery does not automatically resume as a matter of right after the court issues a claim construction ruling. N.D. Ill. LPR 1.3 cmt. Rather, "[i]t is intended that parties seeking further discovery following the claim construction ruling shall submit a motion explaining why further discovery is necessitated by the claim construction ruling." *Id.*

---

its reasoning. *See In re Specht,* 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality."); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

The parties jointly moved to set the initial fact discovery deadline under Local Patent Rule 1.3, which they referred to as the "[c]lose of fact discovery for claim construction phase," for March 15, 2019. Doc. 114 at 2 (citing N.D. Ill. LPR 1.3). The Court entered a scheduling order adopting this deadline and later, upon a joint motion by the parties, extended this deadline to June 14, 2019. After the claim construction phase of fact discovery closed, the parties filed claim construction briefs, and the Court held a claim construction hearing on September 6, 2019.

On December 11, 2019, Choice moved for leave to serve subpoenas on a third party. Choice asserted that the information sought by the subpoenas was "critical to expert discovery, the calculation of Choice's damages, and the determination of willful infringement." Doc. 175 ¶ 8. The Court held a hearing regarding Choice's motion on December 18, 2019. Contec opposed Choice's motion at the hearing; it argued that under Local Patent Rule 1.3, fact discovery does not automatically resume after the entry of a claim construction order, and that a party seeking to resume fact discovery must explain why the claim construction order necessitates additional discovery. The Court granted Choice's motion over Contec's objection. As the Court explained, it did not make sense for the parties to spend time and energy addressing damages before a claim construction ruling, and the post-claim construction period of fact discovery contemplated by the Local Patent Rules allows the parties to focus on the issue of damages after the Court has construed the disputed terms of the patent.

On January 14, 2020, the Court construed the disputed claim terms from the patent-in-suit. The following day, the Court held a status hearing with the parties. At the status hearing, Choice indicated that it wanted to seek post-claim construction discovery related to damages. Contec objected, arguing that there was no need for additional discovery beyond the customary supplementation of information such as sales figures. The Court disagreed, and it gave Choice

until March 9, 2020 to conduct any additional discovery that it needed to complete.[2]  In doing so, the Court commented that this period of time would give Choice enough time to conduct a Federal Rule of Civil Procedure 30(b)(6) deposition on damages if it believed one was necessary. Contec, however, noted that the parties had already taken depositions pertaining to damages and it did not "want to retread . . . old ground"; thus, it wanted to make clear that the Rule 30(b)(6) deposition "relate[d] to the sales figures that [Contec] would update instead of some notion of reopening the entirety of the case from beginning to end."  Doc. 186 at 6:21–7:4.  The Court then explained its understanding of Choice's position: that Choice wanted the option of a Rule 30(b)(6) deposition "based on what has been updated" and to get a better understanding of the clients using the accused product and how many times the product has been sold.  *Id.* at 7:5–10. When the Court asked Choice to confirm this understanding, Choice responded as follows:

> That's exactly right, Your Honor.  We're not positing any new damages theories.  We just want to follow up on existing, you know, on existing issues that we have with their production and also supplementation.  I can't say I'm going to limit it to the exact numbers, but Your Honor is right.  We're going to talk about the clients and the numbers and just specifically what they've produced with respect to those existing damage theory issues.

*Id.* at 7:11–18.  After hearing this response, Contec requested the opportunity to take a corporate deposition of Choice to explore the supplemental damages information it had received from Choice, which the Court granted.

Following the January 15 status hearing, the parties met and conferred regarding the supplementation issues raised by Choice's motion.  Although Contec agreed to produce additional sales data, it contended that Choice's requests for additional discovery were untimely, overly burdensome, not proportional to the needs of the case and, in many cases, sought

---

[2] On March 4, 2020, the Court extended this deadline to May 11, 2020.  The Amended General Order 20-0012 and Second Amended General Order 20-0012 regarding the coronavirus public emergency have further extended this deadline by 49 days, to June 29, 2020.

"information not fairly within the scope of [Choice's] original requests, information not within Contec's possession, custody, or control, and information [Choice] could have more easily obtained from some other source." Doc. 187-4 at 1. Choice also issued "supplemental damages" Rule 30(b)(6) deposition notices to both Contec entities and an individual deposition notice to Tianbao Li. Li is Contec's manager of sales and foreign trade and resides in China. Contec also identified Li in its Rule 26(a)(1) initial disclosures as someone who is likely to have discoverable information about marketing and sales of the accused products. Contec objected to Li's deposition notice on the basis that it "exceeds the scope of permissible discovery at this late stage." Doc. 187-1 at 1–2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) "prescribes the scope of matters upon which a party may seek discovery." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996). Under this rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Because the purpose of discovery is to help define and clarify the issues," courts broadly define the scope of relevant discovery. *Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 WL 406771, at *2–3 (N.D. Ill. Jan. 24, 2020) (citation omitted) (internal quotation marks omitted). As for the "proportionality" requirement, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"It is well-settled that district courts enjoy broad discretion in controlling discovery." *McCarthy v. Option One Mortg. Corp.*, 362 F.3d 1008, 1012 (7th Cir. 2004). In particular, a "district court exercises significant discretion in ruling on a motion to compel" and "is not limited to either compelling or not compelling a discovery request." *Gile*, 95 F.3d at 495–96. Rather, the court "should independently determine the proper course of discovery based upon the arguments of the parties" and "fashion a ruling appropriate for the circumstances of the case." *Id.* at 496. District courts also have broad discretion in managing their dockets and interpreting and applying their local patent rules. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 549 (7th Cir. 2017); *A. Bauer Mech., Inc. v. Joint Arbitration Bd. of Plumbing Contractors' Ass'n & Chi. Journeymen Plumbers' Local Union 130, U.A.*, 562 F.3d 784, 790 (7th Cir. 2009); *see also Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015) ("Local patent rules are essentially a series of case management orders that fall within a district court's broad power to control its docket and enforce its order.").

## ANALYSIS

### I.      Timeliness of Choice's Request for Discovery

The Court first addresses the argument that underlies Contec's entire opposition: the argument that Choice waited too long to request the discovery supplementation and deposition at issue. Contec contends that Choice should have requested this discovery during the claim construction phase of fact discovery, which ended on June 14, 2019. According to Contec, Choice cannot do so now because Local Patent Rule 1.3 and the Court's January 15, 2020 order do not allow Choice to seek any discovery other than the production of updated sales figures and a single, limited Rule 30(b)(6) deposition. Thus, Contec's argument continues, Choice filed its motion to compel well after the deadline for doing so.

Contec's argument is a non-starter. First, it misconstrues the Court's January 15, 2020 order. During the January 15 status hearing, the Court stated that it would "allow *any* additional discovery that" Choice needed to take, Doc. 186 at 5:19–21 (emphasis added), and it ordered "[f]act discovery [to be] closed on March 9, 2020," Doc. 184. Neither statement restricted the type of fact discovery that either party could pursue before this new fact discovery deadline. Had the Court intended to restrict the types of discovery that the parties could serve or follow up on during the re-opened period of discovery, it would have expressly said so.

Furthermore, Contec misrepresents Local Patent Rule 1.3 when it argues that the rule requires a party to "submit a motion explaining why further discovery is necessitated by the claim construction ruling." Doc. 195 at 1 (emphasis in original omitted). Although the rule's accompanying comment states that the intention is for parties to do so, N.D. Ill. LPR 1.3 cmt., the rule itself leaves the re-opening of fact discovery to the court's discretion, N.D. Ill. LPR 1.3 ("Fact discovery may resume upon entry of a claim construction ruling[.]"); *see Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("The word 'may' clearly connotes discretion."). As it is, Local Patent Rule 1.3's comment in no way limits the reasons for which a court may re-open discovery after a claim construction ruling. And even if it did, a court may "modify the obligations and deadlines of the [Local Patent Rules] based on the circumstances of any particular case." N.D. Ill. LPR 1.1; *see also Reytblatt v. Nuclear Regulatory Comm'n*, No. 86 C 385, 1991 WL 140920, at *2 (N.D. Ill. July 22, 1991) ("The decision to extend or reopen discovery falls within the court's broad discretion.").

In the Court's view, it is inefficient for litigants in a patent case to engage in full-scale damages discovery prior to a claim construction ruling. For instance, if a court's claim construction rulings compel a finding of non-infringement, then there is no need for damages

discovery in the first place. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1344 (Fed. Cir. 2015) ("[A]cts that do not constitute patent infringement cannot provide a proper basis for recovery of damages[.]" (citing *Gjerlov v. Schuyler Labs., Inc.*, 131 F.3d 1016, 1024 (Fed. Cir. 1997))). As the Court explained at the December 18, 2019 motion hearing, the post-claim construction period of fact discovery authorized by Local Patent Rule 1.3 allows the parties to focus their efforts on the issue of damages after the Court has determined the scope of the patent claims.

Because the Court re-opened fact discovery without the limitations Contec seeks to impose, Choice's requests for discovery supplementation and the deposition of Li are timely and permissible. That said, Choice should only be using this re-opened period of discovery to seek information that it has not already obtained and that it needs to support its damages case. The Court's intent in re-opening fact discovery after claim construction was not for the parties to re-plow discovery ground already covered.

## II.     Deposition of Tianbao Li

Contec next contends that Choice's deposition notice to Tianbao Li is improper.[3] Contec first argues that the Court's January 15 order did not give Choice leave to depose additional witnesses in their personal capacities. But again, the Court re-opened fact discovery without restricting the types of discovery the parties could pursue. Put another way, nothing in the

---

[3] The Court reminds the parties of their obligations under Local Rule 37.2, which requires parties to meet and confer telephonically or in person about a discovery dispute prior to the filing of a motion to compel. *See* N.D. Ill. LR 37.2; *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 1:14-cv-05696, 2018 WL 505089, at *2 (N.D. Ill. Jan. 22, 2018). Here, there is no indication that the parties met and conferred telephonically or in person regarding Li's noticed deposition. Instead, the parties' "meet and confer" consisted of Choice emailing Li's deposition notice to Contec, and Contec objecting via email. This does not satisfy Local Rule 37.2's meet and confer requirement. *In re Fluidmaster*, 2018 WL 505089, at *2. Although the Court could perhaps deny this aspect of Choice's motion on this ground alone, it concludes that addressing the merits of the parties' arguments is a better "use of the parties' [and] the Court's time and resources." *Id.* at *3.

Court's January 15 order prevents Choice from deposing additional witnesses in their personal capacities.

Contec then takes its contention even farther, asserting that the Court only gave Choice the option of taking a limited Rule 30(b)(6) deposition. The Court did no such thing. During the January 15 hearing, the Court referred to an "option" when stating its understanding of the discovery Choice wanted, *i.e.*, "the option" to take a Rule 30(b)(6) deposition based on the information that was updated. Doc. 186 at 7:5–10. In doing so, the Court did not limit Choice to a single Rule 30(b)(6) deposition or make Choice choose between a Rule 30(b)(6) deposition on one hand, and alternative types of discovery on the other hand. No reasonable reading of the January 15 hearing transcript could find this to be the case.

Contec does not provide any other reason to prohibit Choice from taking Li's deposition. Notably, Contec does not dispute that Li is a likely source of relevant damages information. In fact, Contec explicitly identified Li as an individual who is likely to have discoverable information about the marketing and sales of the accused products. Moreover, Contec does not assert that the burden of making Li available for deposition outweighs its likely benefit, *see* Fed. R. Civ. P. 26(b)(1), or that the information Li might provide would be "unreasonably cumulative or duplicative" and could be obtained from a more convenient source, *see* Fed. R. Civ. P. 26(b)(2)(C)(i). Lastly, Contec does not argue that Li's residence in China provides a reason for prohibiting his deposition.

Thus, the Court grants Choice's motion to compel Contec to make Tianbao Li available in his individual capacity for "a targeted, damages-related deposition." Doc. 187 at 3. The Court further directs the parties to telephonically meet and confer regarding whether Contec will make Li available to testify on the corporate entities' behalf about any of the topics identified in

Choice's "supplemental damages" Rule 30(b)(6) deposition notices.  Also, if Contec has any specific objections to these Rule 30(b)(6) notices, Contec shall promptly inform Choice of these objections, and the parties shall telephonically meet and confer about these objections.  If disputes remain regarding Choice's supplemental Rule 30(b)(6) notices after the parties have exhausted, in good faith, all attempts at compromise, Contec may then bring the dispute to the Court's attention by moving for a protective order.  *See Nieman v. Grange Mut. Ins. Co.*, No. 11-cv-3404, 2012 WL 5471949, at *2 (C.D. Ill. Nov. 9, 2012) ("The correct remedy if the corporation objects to the [Rule 30(b)(6)] notice is to seek a protective order.").

### III.     Supplementation of Contec's Interrogatory Responses

Choice also asks the Court to compel Contec to provide supplemental responses to Interrogatories Nos. 3, 4, 10, 12, 15, 23, 24, and 27.  As an initial matter, because Choice only provided the Court with Contec China's interrogatory responses, the Court, strictly speaking, can only address the sufficiency of that defendant's interrogatory responses.  Nonetheless, to the extent Choice served the same interrogatories on Contec USA and Contec USA's responses mirror Contec China's responses, the Court's rulings apply equally to Contec USA's interrogatory responses.  The Court will also hereinafter refer simply to Contec unless the distinction between Contec China and Contec USA is relevant.

### A.     Citing Deposition Transcripts and Declarations in Interrogatory Responses

Before the Court considers Choice's challenges to particular interrogatory responses, it must address Choice's arguments regarding the form of Contec's supplemental interrogatory responses.  Specifically, Choice asks the Court to require Contec to provide narrative interrogatory responses and, if Contec cites documents under Federal Rule of Civil Procedure 33(d), to provide specific pin cites to business records.  Choice requests such an order because

Contec's responses to other interrogatories in this case include general citations to deposition transcripts or declarations.

Contec does not dispute that it has responded to interrogatories in this manner. To the contrary, Contec highlights its response to Interrogatory No. 13, in which Contec incorporated by reference its response to another interrogatory, as well as certain pages of deposition testimony from two witnesses. But Contec contends that it should not be made to expressly describe this information (and other responsive information Choice obtained through different modes of discovery) in its interrogatory responses because Choice can identify this information for itself.

Contec's position is unpersuasive. An interrogatory response generally should be complete in and of itself and stand on its own. *Ropak Corp. v. Plastican, Inc.*, No. 04 C 5422, 2006 WL 1005406, at *4 (N.D. Ill. Apr. 17, 2006). That means the response should not refer to "pleadings, depositions, other documents, or other interrogatories, especially when such references make it impracticable to determine whether an adequate answer has been given without [a] cross-checking comparison of answers."[4] *Id.* Accordingly, it is improper to answer an interrogatory by incorporating by reference deposition testimony or a response to another interrogatory. *See Hill v. City of Harvey*, No. 17 C 4699, 2019 WL 6173415, at *1 (N.D. Ill. Nov. 20, 2019); *Lewis v. Saint Margaret Mercy*, No. 2:11 cv 313, 2013 WL 214239, at *5 (N.D. Ind. Jan. 17, 2013). In short, Choice "is entitled to discover the factual basis for [Contec's] claims through the use of interrogatories, without being referred to . . . deposition testimony [or] other discovery materials." *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 650 (N.D. Ind. 1991).

---

[4] Rule 33(d), which permits a party to answer an interrogatory by identifying "business records" in certain circumstances, provides a limited exception to this principle. *See* Fed. R. Civ. P. 33(d). But Contec disclaims reliance on Rule 33(d); it asserts that its "incorporation of previous testimony in its responses to duplicative interrogatories is not based on these referenced documents being 'business records.'" Doc. 195 at 14.

Furthermore, Contec cannot refuse to substantively respond to an interrogatory simply because the interrogatory seeks information that has been provided elsewhere in the case through other discovery methods, such as a deposition. "It is long standing and well-settled that methods of discovery are complementary, rather than alternative or exclusive." *Yater v. Powderhorn Ski Co.*, No. 17-cv-01298-LTB-NYW, 2018 WL 776361, at *7 (D. Colo. Feb. 8, 2018). A party is not prevented from obtaining an interrogatory response just because the information requested by the interrogatory is similar to other discovery already obtained. *See In re Folding Carton Antitrust Litig.*, 83 F.R.D. 256, 259 (N.D. Ill. 1979) ("Interrogatories are not improper simply because the same information can be obtained by use of a different discovery procedure."); *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. A-11-CV-542-LY, 2013 WL 2607589, at *4 n.5 (W.D. Tex. June 10, 2013) (noting that even if deposition testimony provided answers to questions asked by interrogatories, "it would not obviate the need for [the plaintiff] to provide interrogatory answers in accordance with the Federal Rules of Civil Procedure"); *Artese v. Acad. Collection Serv.*, No. 3:96 CV 2546 (GLG), 1998 WL 314026, at *1 (D. Conn. June 5, 1998) (rejecting the contention "that if something has been responded to [upon] deposition . . . it is excessive to frame the same question as an interrogatory").

Indeed, a party may consider an interrogatory response to be more valuable than deposition testimony. An interrogatory response is always the response of a party, *see* Fed. R. Civ. P. 33(b)(1), whereas a witness' testimony does *not* constitute the testimony of a party if given in the witness' individual capacity, *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2009 WL 5064441, at *2 (D. Kan. Dec. 16, 2009) ("[W]hen a person testifies in his individual capacity under Rule 30(b)(1), he speaks on behalf of himself, not his company."). And just as a practical matter, a party may be able to more easily question its

opponent's witnesses at trial about a narrative explanation found in a self-contained interrogatory response than about an explanation given at a deposition, which might have to be pulled from different pages of a lengthy deposition transcript.

Accordingly, Contec must supplement any interrogatory response required by this opinion and order with a narrative response; it may not incorporate by reference other interrogatory responses, deposition testimony, or documents except to the extent permitted by Rule 33(d). If Contec relies upon Rule 33(d) for any interrogatory supplementation required by this opinion and order, it must identify the documents or portions of documents at issue "specifically enough so that [Choice] is able to locate the answers just as easily as" Contec. *Kadambi v. Express Scripts, Inc.*, No. 1:13-cv-321-JD-SLC, 2015 WL 10985383, at *6 (N.D. Ind. July 14, 2015); *see* Fed. R. Civ. P. 33(d).

### B.      Interrogatory No. 3

Interrogatory No. 3 states:

> Describe how Contec China sets prices and how Contec China set all prices for the Accused Oximeters, including prices for distributors, retailers, and end users, of the Accused Oximeters sold in the United States.

Doc. 195-2 at 3. Contec initially responded to this interrogatory by citing documents under Rule 33(d) and stating that "[i]n determining what prices to charge for its products, including fingertip pulse oximeters, Contec China considers multiple factors, including but not limited to product costs, profit margins, customer feedback, and market data." *Id.* at 4. Contec later supplemented this response to state as follows:

> Contec China does not use any particular methodology to set prices for Contec China's fingertip pulse oximeters, regardless of whether Contec China's fingertip pulse oximeters are sold in the United States to any particular distributor or end user. Instead, Contec China's senior management considers a number of factors

discussed previously and sets prices based on consideration of those factors, e.g., product costs, profit margins, customer feedback, and market data.

*Id.*[5]

Choice contends that "Contec's pricing methods are undoubtedly relevant to damages," Doc. 187 at 5, and it wants Contec to supplement its interrogatory response to specifically explain how it uses the identified factors to set prices for distributors, retailers, and end users. Contec counters by arguing that supplementation is not necessary because Choice already obtained responsive information in the form of deposition testimony from James Hu, Contec's president.

Neither party's position is entirely convincing. On the one hand, it is unclear what more Choice wants from Contec's response. Although Choice wants Contec to describe its price-setting methodology, according to Contec, it "does not use any particular methodology" to set prices. Doc. 195-2 at 4. In other words, there is no price-setting methodology for Contec to describe. On the other hand, if Contec has additional responsive information about how it sets prices, it should provide that information to Choice in an interrogatory response. For example, it appears that Mr. Hu's deposition testimony provides relevant and responsive information that is not contained in Contec's current interrogatory response, such as the fact that Contec does not set retail prices because it only sells to distributors. Contec cannot avoid answering an interrogatory simply because it can point to other discovery that covered the same subject. Contec can summarize the aspects of Mr. Hu's testimony that it asserts to be relevant and responsive in a supplemental interrogatory response just as easily as it did for its opposition brief.

---

[5] Choice did not identify Contec's supplemental interrogatory response in its opening motion; it only referred to Contec's original interrogatory response. The Court assumes this omission was unintentional, but it should go without saying that the Court will not tolerate the selective and misleading presentation of the evidentiary record.

Thus, the Court orders Contec to supplement its response to Interrogatory No. 3 with any additional information in its knowledge or possession that responds to the interrogatory. This response must reflect, in narrative form, those aspects of Mr. Hu's deposition testimony (or any other deposition testimony or discovery) that Contec asserts are responsive to the interrogatory.

### C.     Interrogatory No. 4

Interrogatory No. 4 states:

> Describe all known distributers or sellers of the Accused
> Oximeters, the relationship of such distributors and sellers to
> Contec China, and Contec China's knowledge about the
> relationship of such distributors or sellers to Choice.

Doc. 187-10 at 11. Contec responded by identifying several known distributors and sellers of its pulse oximeters by name, stating that it "sells products to these distributors and sellers," and stating that it "has no knowledge regarding any relationship these distributors and sellers may have with" Choice. *Id.* at 12. Contec also cited documents pursuant to Rule 33(d). *Id.* at 13.

Choice contends that Contec's response is insufficient because it does not describe Contec's relationships with the identified distributors and sellers, which is relevant to Choice's "claim for price-erosion damages stemming from erosion of the prices it can charge distributors and sellers." Doc. 187 at 5. Choice wants Contec to describe the "history of its business dealings with these companies, including when and how the business relationship began, which products were involved, when and how Contec submitted bids to these companies, and how Contec and the companies negotiated over prices and terms of sale." Doc. 199 at 8.

Contec's interrogatory response is adequate. As Contec points out, its interrogatory response describes Contec's relationships with the identified distributors and sellers as buyer-seller relationships. While Choice now wants many more details about these relationships, its interrogatory did not seek these details. Nor could Contec reasonably be expected to provide all

the details Choice now seeks in response to an interrogatory that merely asked Contec to "[d]escribe . . . the relationship." Doc. 187-10 at 11. Contec was required to respond to the interrogatory that Choice served, not the interrogatory that Choice now wishes it would have served. Contec did so. Choice also does not make any attempt to explain the connection between the detailed business relationship information it now seeks and its price erosion theory of damages. *See Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-cv-02436, 2019 WL 6052366, at *2 (N.D. Ill. Nov. 15, 2019) ("The party requesting discovery bears the initial burden of establishing its relevancy."). The Court therefore denies Choice's motion to compel a supplemental response to Interrogatory No. 4.

### D.    Interrogatory No. 10

Interrogatory No. 10 states:

> Describe the market for fingertip pulse oximeters and Contec's share of that market, including the market share for the Accused Oximeters, in the United States; and identify all documents supporting your answer.

Doc. 187-11 at 5. Contec's response states, among other things, that "the market for 'fingertip pulse oximeters' may include both hospital fingertip pulse oximeters and home-environment fingertip pulse oximeters" and that "Contec's revenue from sales of fingertip pulse oximeters was $5.3 million in 2015, which comprises a small portion of the overall market." *Id.* at 6–7. Choice takes issue with this portion of Contec's response because (1) it does not distinguish between the hospital and home-environment markets or between U.S. and international sales, and (2) it does not provide market share information for 2013, 2014, 2016, 2017, 2018, and

2019, which Choice contends are the other years called for by the interrogatory. Accordingly, Choice wants Contec to supplement its response to provide this information.[6]

The Court begins by noting that Choice's motion seeks a level of detail that it did not request in the interrogatory it served. Although Choice now contends that "[o]nly 'home-environment fingertip pulse oximeters' are at issue," Doc. 187 at 6, its interrogatory did not ask for information about only those particular oximeters; it asked for a response about fingertip pulse oximeters generally. In addition, the interrogatory does not refer to a specific time period, let alone the 2013–2019 time frame Choice calls out in its motion. Once again, Choice seeks information in response to an interrogatory it did not serve.

Supplementation is still necessary, however, because Contec's current response does not fully answer the interrogatory Choice *did* serve. *See* Fed. R. Civ. P. 33(b)(3); *Ropak*, 2006 WL 1005406, at *4 ("It is well established that an answer to an interrogatory must be responsive to the question."). The Court reads Interrogatory No. 10 as asking for three pieces of information (aside from the identification of supporting documents): (1) a description of the market for fingertip pulse oximeters in the United States, (2) a description of Contec's share in that market, and (3) a description of Contec's market share for the Accused Oximeters in the United States. With respect to this requested information, Contec's response only provides the size of the U.S. market for fingertip pulse oximeters in 2015. The remainder of Contec's interrogatory response, however, refers to the market for fingertip pulse oximeters only in general or worldwide terms.

Choice is entitled to know Contec's contentions about the U.S. market for fingertip pulse oximeters, its share of that market, and its market share for the Accused Oximeters in the United

---

[6] For the first time in its reply brief, Choice also seeks an order compelling Contec to identify all documents supporting its answer to Interrogatory No. 10. Because Choice did not make this request in its original motion, the Court does not address it. *See Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

States.  This information is relevant to defining the appropriate market, which Choice must do to prove price erosion or other lost profits damages.[7]  *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001) (a patentee's price erosion analysis "must account for the nature, or definition, of the market"); *see also id.* at 1355–56 (recognizing the need to properly identify "the actual market affected by [] infringement" to demonstrate lost profits damages).  To prove lost profits damages, a patentee must reconstruct the market that "would have developed absent the infringing product," *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999), and the alleged infringer's market share may be a relevant data point in this reconstruction.  For instance, if an alleged infringer's market share increases after it introduces the product accused of infringement, that may shed light on what the patentee's market share would have been had there been no infringement.  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1379–80 (Fed. Cir. 2015).  Or, if an alleged infringer's market share does not change significantly after it introduces the accused product, that may indicate that lost profits damages are not appropriate because consumers do not care whether the product uses the patented features at issue.  *See Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991).

Contec does not dispute the relevance of the information requested by Interrogatory No. 10.  Nor does it contend that worldwide market data is a sufficient substitute for U.S. market data.  Instead, Contec argues that the additional information sought by Choice is "the subject of

---

[7] Lost profits damages for patent infringement based on a price erosion theory seek to recover "[l]ost revenue caused by a reduction in the market price of a patented good due to infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1378 (Fed. Cir. 2013); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001).  To recover damages "on a theory of price erosion, a patentee must show that 'but for' infringement, it would have sold its product at a higher price," *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378 (Fed. Cir. 2003), which requires the patentee to "establish the amount of price reduction, and that the price was reduced in response to the" infringer's competition, *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002).

expert testimony and is not within Contec's possession, custody, or control." Doc. 195 at 10. Contec also points out that Choice already deposed its damages expert, Mr. Kidder, and it asserts that Choice will have the opportunity to depose him again during the expert discovery period.

The Court recognizes that market and market share definitions will often require the analysis of an expert. However, it appears that Mr. Kidder has already provided at least some of the expert analysis requested by Interrogatory No. 10, as shown by Contec's citation to large portions of Mr. Kidder's declaration and deposition testimony in response to the interrogatory. If Contec asserts that Mr. Kidder's testimony contains responsive information, it must do more than just incorporate the testimony by reference; Contec must lay out the relevant testimony in the form of a narrative response. Moreover, regardless of whether Mr. Kidder or another expert will later provide opinions on the subject, Contec must respond to this interrogatory to the extent it can based on the information now known to it. *See Bradley v. Val-Mejias*, No. 00-2395-GTV, 2001 WL 1249339, at *3 (D. Kan. Oct. 9, 2001) ("The fact that Plaintiff may later supplement his interrogatory response with an expert report does not permit him to refuse to respond at the present time with whatever discoverable information he presently holds.").

Accordingly, the Court orders Contec to supplement its response to Interrogatory No. 10 so that it describes the market for fingertip pulse oximeters in the United States, Contec's share of that market, and Contec's market share for the Accused Oximeters in the United States. Contec need only do so for the period of time from when the interrogatory was first served to the present. If Contec does not have enough information in its knowledge or control to fully respond to this interrogatory, it should explicitly say so in its supplemental interrogatory response. *See Smith v. Howe Military Sch.*, No. 3:96-CV-790RM, 1998 WL 175875, at *2 (N.D. Ind. Feb. 27, 1998); *Bardwell v. K & R Delivery, Inc.*, No. 86 C 5731, 1987 WL 28261, at *1 (N.D. Ill. Dec.

14, 1987); 8B Richard L. Marcus, Fed. Prac. & Proc. Civ. (hereinafter "Wright and Miller")

§ 2177 (3d ed. Aug. 2019 update) ("If . . . a party cannot answer an interrogatory, it is entitled to

so state under oath. If a party is unable to give a complete answer to an interrogatory, it should

furnish any relevant information that is available.").

### E.      Interrogatory No. 12

Interrogatory No. 12 states:

> Describe the sale or distribution of Contec's fingertip pulse
> oximeters indirectly to retailers, including identifying any third
> party who sells or distributes Contec fingertip pulse oximeters to
> retailers, the model numbers of the fingertip pulse oximeters sold
> or distributed through each such third party, the annual sales
> volume and revenue received for each such model sold or
> distributed through each such third party, any agreement with such
> third party for sale or distribution to a retailer, and all
> communication directly by Contec or through a third party
> regarding any offer to sell any Contec fingertip pulse oximeter to
> retailers; and identify all documents supporting your answer.

Doc. 187-11 at 9. In response, Contec incorporated by reference its response to Interrogatory

No. 4 and an expert declaration from its damages expert, Mr. Kidder; identified documents

pursuant to Rule 33(d); and stated that "Contec China does not make any sales to retailers in the

United States" and that it "is aware that one of its distributors, Veridian Healthcare, LLC, sells

fingertip pulse oximeters to Rite Aid." *Id.* at 10.

Choice argues that Contec's response is insufficient because it provides irrelevant

information and does not provide the specific information requested by the interrogatory, which,

Choice says, is relevant to damages stemming from the "erosion of prices it charges to retailers."

Doc. 187 at 7. In particular, Choice contends that Contec is aware that one of its distributors

sells Contec products to a particular retailer because that retailer "requires audits of all

underlying manufacturers," and yet "Contec refuses to disclose this or any other distributor-

retailer relationships." *Id.* Choice asks the Court to compel Contec to provide the following information:

> (1) a full list and description of which distributors sell to which retailers (such as Beurer to CVS), (2) model numbers for fingertip pulse oximeters sold through third parties, including distributors, (3) agreements with third parties, including distributors, for sale or distribution to a retailer, (4) all communications directly by Contec or through a third party regarding any offer to sell any Contec fingertip pulse oximeter to retailers (regardless if they eventually resulted in actual sales), (5) usable spreadsheets, and (6) all documents supporting its answer.

*Id.* at 7–8. Contec, however, asserts that it has "provided all of the responsive information it has in its possession, custody, or control." Doc. 195 at 11. Specifically, Contec contends that it "does not track—and generally has no way of knowing about—downstream sales of Contec products that [its] distributors may make to retailers." *Id.* According to Contec, while distributors "may at times ask Contec [for] an audit certificate, the distributors typically do not disclose the reason for their request." *Id.*

Choice is entitled to a self-contained interrogatory response based on "the information within [Contec's] knowledge and control." *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 413 (N.D. Ill. 2007); *Ropak*, 2006 WL 1005406, at *4. As the Court has already discussed, it is not appropriate for Contec's interrogatory response to incorporate other discovery by reference. Nor is the interrogatory response sufficient merely because Contec can explain in its opposition brief why it does not have any additional responsive information. If this is the case, Contec should say so in its interrogatory response. *See Smith*, 1998 WL 175875, at *2; *Bardwell*, 1987 WL 28261, at *1; 8B Wright and Miller § 2177. What is more, because Contec does not dispute that the documents on which it relies under Rule 33(d) are "voluminous" and "indecipherable" as Choice claims, *see* Doc. 187 at 7, it is unlikely that "the burden of deriving

or ascertaining the answer" to Interrogatory No. 12 from these documents is "substantially the same for either party." *See* Fed. R. Civ. P. 33(d).

At the same time, Choice's request for supplementation is much too broad. It appears that Choice wants Contec to supplement its interrogatory response by producing several types of documents, such as agreements, communications, and usable spreadsheets. But document requests, not interrogatories, govern the production of documents. If Choice wants Contec to produce these documents, it must seek their production in response to relevant document requests. Choice cannot use a purportedly inadequate interrogatory response to bypass this process. Moreover, Choice's supplementation request is still too broad even if the Court more narrowly construes it as only seeking a description of agreements and communications, as opposed to their production. The Court does not see how making Contec describe the substance of every agreement and communication it may have had regarding the sale of fingertip pulse oximeters to retailers is "proportional to the needs of the case," *see* Fed. R. Civ. P. 26(b)(1), especially given Choice's failure to explain how this amount of detail will help Choice prove its price erosion damages theory, *see Eternity Mart*, 2019 WL 6052366, at *2 ("The party requesting discovery bears the initial burden of establishing its relevancy.").

Thus, the Court orders Contec to supplement its response to Interrogatory No. 12 as follows. Based on "the information within [its] knowledge and control," *Am. Int'l Specialty Lines*, 240 F.R.D. at 413, Contec must identify any third party who sells or distributes Contec fingertip pulse oximeters to retailers; the model numbers of those oximeters; the annual sales volume and revenue received by the third-party distributors for selling these models to the retailers; the prices at which the distributors sell or have offered to sell these models to the retailers; and all documents supporting Contec's response. Contec's response must provide any

relevant and responsive information from its response to Interrogatory No. 4, Mr. Kidder's declaration, and any other testimony or discovery in narrative form. In addition, Contec must ensure that any continued reliance on Rule 33(d) identifies the relevant documents or portions of documents "specifically enough so that [Choice] is able to locate the answers just as easily as" Contec. *Kadambi*, 2015 WL 10985383, at *6. If Contec cannot identify any of the required information based upon a lack of information within its knowledge or control, it must explicitly state so in its interrogatory response.

### F. Interrogatory No. 15

Interrogatory No. 15 states:

> Explain the bases for Contec's assertion that it has "ceased manufacturing the accused products" and identify the model numbers of the fingertip pulse oximeters that Contec ceased manufacturing after Choice filed the complaint in this case, the date on which the last unit of each accused oximeter was manufactured, the amount of inventory of each such model that remains in Contec's possession or the possession of any distributor or third party, whether Contec or any distributor or agent of Contec has sold any such fingertip pulse oximeter after Contec ceased manufacturing and the number of units sold or distributed, and whether Contec or any distributor or agent of Contec continues to sell any such fingertip pulse oximeter; and identify all documents supporting your answer.

Doc. 187-11 at 13. Contec's response states that in February and March 2018, it stopped manufacturing the CMS50D and stopped selling this model to any U.S. customers, including distributors and online customers. Contec also states that it "has modified the CMS50D so that its display no longer changes by pushing the power button, but instead rotates based on an accelerometer." *Id.* at 14. Lastly, Contec incorporates by reference the deposition testimony of James Hu and identifies certain documents under Rule 33(d).

Choice takes issue with Contec's response to this interrogatory because (1) it is limited to the CMS50D model, and (2) it fails to answer the portion of the interrogatory dealing with inventories and whether Contec, its distributors, or agents have sold or are selling fingertip pulse oximeters after Contec ceased manufacturing them. Choice contends that "[t]his information is relevant to damages because it goes to whether infringing sales occurred after Contec represented on October 18, 2018 that it ceased manufacture and sale of the accused products in the United States." Doc. 187 at 8. Choice wants Contec to supplement its interrogatory response by identifying the following information:

> (1) the model numbers of the fingertip pulse oximeters that Contec ceased manufacturing after Choice filed the complaint in this case, (2) the date on which the last unit of each accused oximeter was manufactured, (3) the amount of inventory of each such model that remains in Contec's possession or the possession of any distributor or third party, (4) whether Contec or any distributor or agent of Contec has sold any such fingertip pulse oximeter after Contec ceased manufacturing and the number of units sold or distributed, (5) whether Contec or any distributor or agent of Contec continues to sell any such fingertip pulse oximeter, and (6) all documents supporting its answer.

*Id.* at 8–9.

The Court agrees that Contec's interrogatory response is insufficient. It is unclear why Contec only addressed the CMS50D model in its narrative response when the CMS50D is not the only model accused of infringement. Choice's complaint also identified the "CMS50D+, CMS50E, CMS50H, CMS50N, and CMS50QB and separately branded OEM pulse oximeters equivalent to these models" as infringing products.[8] Doc. 1 ¶ 26. When Contec stopped manufacturing and selling these models is just as relevant to Choice's damages calculations as

---

[8] The Court recognizes that the accused products a patentee identifies in its complaint do not necessarily control a case because the patentee later identifies the accused products at issue as part of its Initial and Final Infringement Contentions. N.D. Ill. LPR 2.2(b), 3.1(a)(2). However, neither party has provided the Court with the list of accused products set forth in these contentions.

when Contec stopped manufacturing and selling the CMS50D. Contec's interrogatory response also does not provide any information about inventories, the continued sale of products by third parties, or the documents supporting its response, as requested by the interrogatory.

Contec does not dispute the relevance of this information or that its current interrogatory response does not disclose this information. Rather, Contec contends that the information now requested by Choice has been or will be provided elsewhere. As already discussed, though, Contec may not avoid responding to an interrogatory simply because responsive information has been provided through other means. Even if Contec has repeatedly informed Choice that it "does not have information regarding its distributors' downstream sales" in other contexts, Doc. 195 at 12, Contec should state as much in its interrogatory response. Similarly, if Mr. Hu gave testimony that responds to this interrogatory, Contec should describe it in its interrogatory response just as it did in drafting its opposition.

The Court grants Choice's motion to compel Contec to supplement its response to Interrogatory No. 15. Contec's supplemental response must provide the requested information as to all models accused of infringement, as well as the requested information about inventories and the continued sale of products. Contec's supplemental response must also identify the documents supporting its response. If Contec cannot answer a portion of the interrogatory based on a lack of information or knowledge in its possession, it should state as much in its response. *See Smith*, 1998 WL 175875, at *2; *Bardwell*, 1987 WL 28261, at *1; 8B Wright and Miller § 2177. Finally, to the extent Contec intends to cite yet-to-be produced supplemental sales data in response to this interrogatory under Rule 33(d), it should ensure that it identifies the relevant documents or portions of documents "specifically enough so that [Choice] is able to locate the answers just as easily as" Contec. *Kadambi*, 2015 WL 10985383, at *6.

### G.  Interrogatories Nos. 23, 24, and 27

Interrogatory No. 23 requests information regarding Contec China's knowledge about certain patents and litigation proceedings, and Interrogatory No. 24 seeks a description of Contec China's communications regarding any fingertip pulse oximeter patents owned by Choice. Contec initially did not provide a substantive response to either interrogatory. After Choice filed its motion to compel, however, Contec supplemented its responses to Interrogatories Nos. 23 and 24, and Choice has dropped its request to compel responses to these interrogatories in light of this supplementation. Thus, the Court denies as moot Choice's motion to compel supplemental responses to Interrogatories Nos. 23 and 24.[9]

Interrogatory No. 27 reads as follows:

> Describe any communication Contec China has had with any U.S. retailers or has had internally regarding any U.S. retailer, including but not limited to Walmart, Target, CVS, Rite Aid, and Walgreens, to market or sell its fingertip pulse oximeters; identify each person who had such communication, each person's affiliation with Contec China, the time of each communication, and all documents supporting your answer; describe searches conducted and identify persons inquired to locate any such communication.

---

[9] Even so, the Court comments briefly on the apparent breakdown of the meet and confer process with respect to these interrogatories. Because Local Rule 37.2's meet and confer process is meant "to weed out disputes that can be amicably resolved without judicial intervention, thereby freeing the court's resources for disputes that truly cannot," *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, No. 12-cv-05105, 2017 WL 3922175, at *4 (N.D. Ill. Sept. 7, 2017), parties should only bring to the Court those disputes that cannot be resolved after the parties have fully and in good faith exhausted attempts at compromise. That did not happen here. Indeed, given Contec's willingness to supplement its responses to Interrogatories Nos. 23 and 24 without a court order requiring it to do so, the Court questions why Contec did not make these supplementations *before* Choice filed its motion. Contec concedes that it had already agreed to supplement its interrogatory responses, and although Contec contends that the parties were still negotiating the scope of Interrogatory No. 24, nothing in Choice's motion defines the scope of this interrogatory any differently than the limitation in scope Choice offered more than a year before. *See* Doc. 187-13 at 1–2. This indicates that the parties were not truly at an impasse regarding these interrogatories. While the Court still appreciates the fact that the parties resolved this dispute, albeit belatedly, it again reminds the parties to fully comply with Local Rule 37.2 and exhaust all attempts at good-faith compromise for any future discovery disputes before bringing a motion to compel.

Doc. 187-14 at 11.  In January 2019, Choice agreed to limit the interrogatory to "information known by the president, C-level executives, and the people in Contec's foreign trade department" for Contec China, and information known by the "president and sales representatives/agents" for Contec U.S.  Doc. 187-13 at 1–2.  Choice contends that Contec's answer to this interrogatory "directly affects Choice's price-erosion damages, as Contec's bids to sell its infringing products to retailers and distributors [have] eroded the price at which Choice can sell its competing products to the same retailers and distributors."  Doc. 187 at 10.  In its opening brief, Choice requested an order compelling Contec to provide "a full bid history for each retailer, a description of all communications concerning such bids, and all documents supporting its answer."  *Id.*

Contec contends that the parties were still negotiating the scope of Interrogatory No. 27, even though nothing in Choice's motion defines this interrogatory's scope any differently than the limitation offered by Choice in January 2019.  Regardless, Contec supplemented its response to Interrogatory No. 27 after Choice filed its motion to compel.  Doc. 195 at 13.  In its supplemental response, Contec lodged an objection to the scope and proportionality of the interrogatory to the extent it "seeks production and/or identification of email correspondence, which is governed by LPR ESI 2.6, under which [Choice] has never served discovery requests."  Doc. 195-4 at 9.  In terms of a substantive response, Contec answered as follows:

> On information and belief, in the past, one or more of Contec China's sales representatives have contacted U.S. retailers regarding Contec China's fingertip pulse oximeters, including Xu Jiang.  Those sales representatives are no longer employed by Contec China, and after diligent search, Contec China has been unable to locate additional information regarding any such communications.

*Id.* at 10.

Choice, however, argues that Contec's supplemental response is still inadequate. Choice contends that the response fails to describe the content and time frame of Contec's communications with the U.S. retailers or identify the retailers with whom Contec communicated. Choice also takes issue with Contec's failure to acknowledge whether it has had any internal communications regarding any U.S. retailer. And according to Choice, because Contec must have email records reflecting these requested communications, the Court should compel Contec to search these emails before providing a full response to the interrogatory.

At the outset, Contec's objection to the scope and proportionality of Interrogatory No. 27 based on Local Patent Rule 2.6 for Electronically Stored Information ("ESI") is misplaced. This rule limits a party's obligation to *produce* ESI in discovery; a party need not produce emails or other forms of electronic correspondence unless its opponent serves "specific email production requests" because "[g]eneral ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include" those types of documents. N.D. Ill. LPR ESI 2.6(a). Local Patent Rule 2.6 for ESI, however, does not say anything about a party's obligation to review emails or other electronic correspondence so that it can fully respond to an interrogatory served under Rule 33. *See* N.D. Ill. LPR ESI 2.6. Nor does Contec cite any decision finding that a party can rely upon LPR ESI 2.6 to limit this obligation. Although Choice's failure to serve "specific email production requests" means that Contec need not produce electronic correspondence, it does not mean that Contec can avoid reviewing electronic correspondence if it is necessary to fully respond to an interrogatory. What is more, because Local Patent Rule 2.6 for ESI only applies to electronic correspondence, N.D. Ill. LPR ESI 2.6(a), it does not apply to documents a party has printed and kept in hard copy form. And here, Mr. Hu's deposition testimony indicates that Contec possesses hard copies of certain email communications. Thus, any limitations that Local

Patent Rule 2.6 for ESI does impose on a party's discovery obligations certainly do not apply to these documents.

That said, the Court is not convinced that the breadth of information Choice wants Contec to provide with respect to Interrogatory No. 27 is "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). The interrogatory itself seeks a description of *any* communication that Contec has had internally or with a U.S. retailer about marketing or selling its fingertip pulse oximeters; the identity and affiliation of each participant in these communications; and an identification of all supporting documents, searches conducted, and persons asked to locate the communications. Then, with respect to the description sought by the interrogatory, Choice wants Contec to describe the content and time frame of every communication and to provide a full bid history for each retailer. To be sure, information about the timing and the amount of any bids Contec made to sell the accused products may be relevant for determining price erosion damages. *See Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002) (finding that to prove price erosion damages, the patentee had to "establish the amount of price reduction, and that the price was reduced in response" to the alleged infringer's competing bid). But it is unclear why Choice needs all the information it requests in its interrogatory and motion to compel to make this determination. Furthermore, if Contec has had a significant number of communications about marketing or selling its fingertip pulse oximeters, it is not practicable for Contec to give a narrative response describing every such communication.

After weighing these competing considerations, the Court finds the following to be "the proper course of discovery" based on "the circumstances of the case." *See Gile*, 95 F.3d at 496. The Court orders Contec to review all emails and correspondence in its possession, both in electronic and hard copy form, that could be reasonably expected to show the information known

"by the president, C-level executives, and the people in Contec's foreign trade department" (for

Contec China) and the information known by the "president and sales representatives/agents"

(for Contec U.S.) about the subject matter of Interrogatory No. 27. Doc. 187-13 at 2. After

conducting this review, Contec shall supplement its interrogatory response to disclose whether it

has had any internal communications about marketing or selling its fingertip pulse oximeters to

any U.S. retailer and, if so, to identify the individuals at Contec who had these communications.

Contec shall also supplement its response to disclose the identity of any U.S. retailer with whom

Contec communicated about marketing or selling its fingertip pulse oximeters, the time frame

within which these communications took place, the timing and amount of any bids

communicated with respect to Contec's fingertip pulse oximeters during this time frame, and the

identity of the individuals at Contec who communicated with the U.S. retailers. Contec may rely

upon Rule 33(d) to identify documents it has produced or will produce in this litigation to

supplement its response so long as it sufficiently identifies the relevant portions of the

documents. *See Kadambi*, 2015 WL 10985383, at *6.

## IV. Supplementation of Contec's Document Production

Finally, Choice seeks an order compelling Contec to supplement its document production

with respect to Document Requests Nos. 26, 28, 31, and 45, which Choice says are associated

with Interrogatories Nos. 10, 12, 15, and 27. But there is no indication that the parties met and

conferred to discuss the sufficiency of Contec's document production in response to these

requests. Nor does Choice explain why these document requests seek information relevant to

this case or why Contec's current document production in response to these document requests is

insufficient. Indeed, all Choice does is cite Document Requests Nos. 26, 28, 31, and 45 in

footnotes with "see also" signals. Doc. 187 at 6 n.4, 8 n.5, 9 n.6, & 10 n.8. This is inadequate to

support Choice's request. *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) ("We have often said that a party can waive an argument by presenting it only in an undeveloped footnote."); *Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, No. 17 C 7576, 2019 WL 6258490, at *1 n.1 (N.D. Ill. Nov. 22, 2019) (finding that a party moving to compel discovery forfeited contentions it failed to develop). The Court denies this aspect of Choice's motion to compel.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Choice's motion to compel [187]. The Court also grants Choice's motion for leave to file its reply brief under seal [200]. The Court directs the parties to telephonically meet and confer regarding the timing of Mr. Li's deposition and Contec's supplementation of its interrogatory responses. The Court expects that the parties will work together to set dates that accommodate any disruptions, restrictions, and delays that may be caused by the ongoing global coronavirus pandemic. The parties shall then file a report within 21 days of this opinion that sets forth the parties' agreed dates, or, if there is no agreement, the dates each party proposes. If the parties determine that they need more time to file the required report due to the coronavirus pandemic, they should inform the Court by way of a joint motion.

Dated: April 8, 2020

SARA L. ELLIS
United States District Judge