# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:18-cv-00825 |
| CONTEC MEDICAL SYSTEMS USA INC. and CONTEC MEDICAL SYSTEMS CO., LTD., | ) ) ) | Honorable Franklin U. Valderrama Magistrate Judge Susan E. Cox |
| Defendants. | ) ) ) | |

## PLAINTIFF BEIJING CHOICE'S MOTION FOR SANCTIONS

{9923993:2 }

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

   I.   BRIEF OVERVIEW OF THE CASE AND ROLE OF TIANBAO "JASON" LI WITHIN CONTEC ............................................................................................................. 2

   II.   CHOICE'S EXTENSIVE TWO-YEAR EFFORT TO SCHEDULE LI'S DEPOSITION ..................................................................................................................... 4

   III.   MR. LI ANNOUNCES HIS RESIGNATION AND CONTEC FAILS TO DISCLOSE THAT FACT TO CHOICE OR THIS COURT ............................................. 5

   IV.   CONTEC DISCLOSES THAT MR. LI IS UNAVAILABLE FOR A DEPOSITION AFTER HE IS NO LONGER A CONTEC EMPLOYEE .................................................... 6

   V.   THE OCTOBER 14 STATUS CONFERENCE ................................................................. 7

ARGUMENT .................................................................................................................................. 9

   I.   CONTEC'S MISCONDUCT WARRANTS THE IMPOSITION OF SERIOUS SANCTIONS ..................................................................................................................... 10

   II.   THIS COURT SHOULD ORDER CONTEC TO PAY MONETARY SANCTIONS AND ISSUE A REPORT AND RECOMMENDATION OF AN ADVERSE INFERENCE ..................................................................................................................... 12

   III.   THIS COURT SHOULD IMPOSE MONETARY SANCTIONS ON CONTEC'S COUNSEL .......................................................................................................................... 13

CONCLUSION ............................................................................................................................. 15

Pursuant to Federal Rule of Civil Procedure 37(b), 28 U.S.C. § 1927, and this Court's inherent authority, Defendant Beijing Choice Electronic Technology Co., Ltd. ("Choice") hereby moves for sanctions against Defendants Contec Medical Systems USA Inc. and Contec Medical Systems Co., Ltd. (together, "Contec") and their counsel, and in support thereof states as follows:

**INTRODUCTION**

Contec and its counsel intentionally misled Choice and this Court to thwart discovery from the most knowledgeable witness about Contec's marketing and sales efforts of the accused products in the United States—a critical issue in this case. Choice does not make this allegation lightly, but it is the only reasonable conclusion to draw from the undisputed facts. Significant sanctions are warranted and necessary to limit the resulting prejudice.

For almost two years, Choice has sought the deposition of Tianbao Li—Contec's Managing Director of International Business—who Contec's witnesses (including its president and chairman) repeatedly deferred to as the person with the most knowledge about Contec's U.S. marketing and operations. Contec has fought Choice's efforts to secure Mr. Li's testimony at every juncture. That led Choice ultimately to file a motion to compel the testimony, which the Court granted in April 2020. Despite the order requiring Contec to produce Mr. Li for deposition, Contec still refused based on a litany of dubious excuses related to the pandemic during the next year and a half. Contec's recent disclosures confirm that these excuses were mere pretenses to achieve Contec's true endgame: preventing Choice from ever hearing Mr. Li's testimony about Contec's U.S. operations.

Indeed, Contec admitted that it learned on August 16, 2021 that Mr. Li tendered his resignation and expressly stated that he would depart on September 14, 2021. Instead of immediately informing Choice or this Court that a critical witness was about to leave its control, Contec filed status reports with this Court (on September 7th and September 15th) designed to do

just the opposite—mislead Choice and the Court into postponing the Li deposition until he was permanently out of reach. And that is exactly what happened.

Contec's inexcusable deception has materially impaired Choice's ability to prove its case. Contec has a duty of candor to both Choice and this Court. Its willful actions to permit a key witness to disappear beyond Choice's reach constitutes a bad-faith abuse of the discovery process. And this Court should both impose monetary sanctions and grant Choice an adverse inference that Mr. Li's testimony would have been unfavorable to Contec.

This Court should also sanction Contec's counsel as a willing and active participant in Contec's concealment. Contec's counsel admits that they knew no later than September 13, 2021—one day *before* Mr. Li's departure—that he was leaving the company. But they did not inform Choice or the Court of that fact. Instead, Contec's counsel filed a status report on September 15, 2021, raising only logistical issues regarding where and when the proposed deposition could be taken but omitting that the deposition had now become virtually impossible because Mr. Li was no longer a Contec employee. Contec's counsel exacerbated their misrepresentations when (1) they lied to Choice at the September 30th meet and confer that they "just learned" of Mr. Li's departure, and (2) then filed a status report on October 5th perpetuating that lie (falsely stating that they learned of his departure on September 29, 2021.) The actions of Contec's counsel were objectively unreasonable in violation of 28 U.S.C. § 1927, so this Court should also impose monetary sanctions against Contec's counsel under that rule.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

**I.     BRIEF OVERVIEW OF THE CASE AND ROLE OF TIANBAO "JASON" LI WITHIN CONTEC**

This case involves Contec's infringement of Choice's patent on an improvement to fingertip pulse oximeters, which are devices capable of measuring a person's oxygen levels and

pulse through a noninvasive sensor positioned over her fingertip. Choice and Contec both manufacture these products and are the two top competitors in the U.S. market. After Choice successfully created a U.S. market for its portable home-use fingertip pulse oximeters with the patented display adjusting features, Contec followed suit and introduced its accused products mimicking Choice's products in the United States. Contec's headquarters are in Qinhaungdao, China, where its products are designed and manufactured. Contec also has a U.S. subsidiary that coordinates its marketing, sales, and supply into the United States.

For over 16 years, Tianbao Li served as Contec's Managing Director of International Business. (**Exhibit 1** [LinkedIn Profile for Tianbao "Jason" Li].) In that role, he headed Contec's 90-person foreign-trade department, which was responsible for communicating with or visiting Contec's customers in the United States. (**Exhibit 2** [Depo Tr. of Hu] at 19:11-20:5.) Mr. Li resides in Qinhaungdao, China. (Ex. 1.)

Mr. Li was essential to Contec's operations and marketing efforts in the United States, and given his C-suite position and seniority at the company, he reportedly was the single most knowledgeable Contec employee regarding those operations. Indeed, during Contec's Rule 30(b)(6) deposition on August 18, 2020, its President and Chairman of the Board—James Hu— repeatedly deferred to Mr. Li in response to numerous questions about the U.S. operations. (*See, e.g.*, Ex. 2 at 19:4–14, 42:10–16, 60:3–22; *see also* **Exhibit 3** [Transcript of Oct. 14, 2021 Hearing] at 4:9–11 ("MR. CAMPBELL: . . . So his name came up when Mr. James [Hu] was unable to answer the specific question regarding marketing and sales and pointed to Mr. Li.").) Li was also— by Contec's own admission—the only employee with knowledge of communications between Contec's U.S. customers and Contec employees who have since left the company. (Dkt. 222 [Transcript of Oct. 1, 2020 Hearing] at 12:11–18; *see also* Dkt. 217 [Contec-Authored Section of

Choice's Joint Disputed Motion to Compel] at 6 ("Contec's knowledge of any such communications [of its former employees with U.S. customers] is based on the memory of Tianbao Li, the director of Contec's foreign trade department.").)

## II. CHOICE'S EXTENSIVE TWO-YEAR EFFORT TO SCHEDULE LI'S DEPOSITION

Given Mr. Li's knowledge of Contec's U.S. marketing and sales and their importance to the case, Choice has spent almost two years attempting to depose him. Choice initially noticed Mr. Li's deposition for January 24, 2020, after the Court reopened discovery on damages issues post-claim construction. After Contec refused to produce Mr. Li for deposition, Choice filed a motion to compel on February 17, 2020, which the Court granted on April 8, 2020. (*See* Dkt. 206 at 8-10.)

After the global coronavirus pandemic began affecting legal proceedings in the United States, counsel for the parties mutually agreed to several extensions of the discovery period while they figured out how to operate in the pandemic environment. (*See, e.g.*, Dkt. 280; Dkt. 219.) Then, in September 2020, Choice took the position that depositions could proceed because, even though mainland China disallows depositions of witnesses located within its borders, depositions could occur in Macau, as both Macau and mainland China had recently dropped any quarantine requirement for persons traveling between the two areas. (*Id.* at 2:13–3:4.) This led the Court to further extend the discovery deadline to allow such depositions. (*Id.* at 3:5–4:4.)

Yet Contec continued to refuse to produce Mr. Li, requiring Choice to again file a motion to compel on October 12, 2020. (Dkt. 224.) After the case was transferred to Judge Valderrama, who referred the case to Magistrate Judge Cox for discovery matters, the Court extended the discovery cutoff and tabled the deposition of Mr. Li recognizing "Defendants' company policy forbid[ding] travel outside mainland China" due to COVID. (Dkt. 231.) The Court subsequently

extended discovery twice more, again citing circumstances preventing travel for the deposition. (Dkt. 244; Dkt. 246.)

In late July 2021, after learning of the feasibility of deposing mainland China witness in Macau given the then-current situation, Choice again reached out to Contec to schedule the deposition. Contec did not respond to Choice's inquiries.

### III. MR. LI ANNOUNCES HIS RESIGNATION AND CONTEC FAILS TO DISCLOSE THAT FACT TO CHOICE OR THIS COURT

On August 16, 2021, Mr. Li informed Contec that he would be resigning his employment with Contec, effective September 14, 2021. Even though Choice had been attempting to schedule Mr. Li's deposition for well over a year and a half, Contec did not inform Choice or the Court of his impending departure. Instead, on September 7, 2021, the parties filed a court-ordered status report, in which Contec again argued that local quarantine requirements impeded Mr. Li's travel to Macau, but Contec did not raise any other issues regarding Mr. Li's availability and did not inform either Choice or this Court that Mr. Li's employment with Contec would end in exactly one week. (Dkt. 249.) The Court then ordered additional briefing on the disputed quarantine requirements and travel restrictions in an updated joint status report (Dkt. 250), which the parties filed on September 15, 2021. (Dkt. 252.)

Contec again remained silent about Mr. Li's departure in the September 15 joint status report. In connection with the joint status report, Contec provided a September 14, 2021 declaration from one of its employees—Nadia Guo—spending several pages explaining the general quarantine requirements and travel restrictions that allegedly prevented the Contec witnesses from traveling for the deposition. (Dkt. 252; Dkt. 257 Ex. 7.) Ms. Guo's declaration did not say a word about Mr. Li's departure from the company, even though that departure made him unavailable to testify regardless of the travel restrictions. And Ms. Guo clearly knew about Mr.

Li's departure at the time she executed the declaration as Contec's counsel admitted at the October 14th hearing that she notified them of that fact no later than September 13th (two days before the September 15 joint status report). (*See* Ex. 3 p. 3:4-10.) Contec's counsel also omitted—in the joint status report and otherwise—any mention to Court or Choice of Mr. Li's departure. Unaware that Li was no longer a Contec employee, the Court compelled Li's deposition on September 23, 2021, and also required the parties to meet and confer on timing and to file another joint status report to provide "firm dates" for the Contec depositions by October 5, 2021. (Dkt. 253.)

**IV.  CONTEC DISCLOSES THAT MR. LI IS UNAVAILABLE FOR A DEPOSITION AFTER HE IS NO LONGER A CONTEC EMPLOYEE**

Choice attempted to schedule a meet and confer on September 24th, but Contec delayed several days in responding to Choice's overture, and the meeting did not occur until September 30th. (**Exhibit 4** [Email Chain re: M&C].) During that meet and confer, Contec revealed, for the very first time, that Mr. Li had left the company 10 days earlier, and that Contec could no longer offer Mr. Li's deposition. (*Id*.) By that time, Contec had concealed Li's impending and then actual departure for nearly a month-and-a-half. Counsel for Contec, however, represented that they just learned about that departure—later proven to be a misrepresentation by their own admission that they had in fact known for more than two weeks.

On October 5, 2021, the parties filed a joint status report with the Court, in which Choice notified the Court that Mr. Li had left Contec, that Contec had failed to disclose the departure to Choice or the Court until after the fact, and that Contec's actions had severely prejudiced Choice. (Dkt. 256 at 3.) Choice also informed the Court that it intended to seek sanctions for Contec's actions. (*Id.*) In response, Contec claimed that its counsel "did not learn of his departure until September 29, 2021." (*Id*. at 5.) Contec also stated that it had no ability to force Mr. Li to remain employed and could not compel him to attend a deposition before his departure. (*Id*.) Contec did

not address whether it could have *notified* Choice or the Court of Mr. Li's impending departure beforehand so that Choice or the Court could take appropriate action to secure Mr. Li's deposition. Instead, Contec stated that it would "produce another 30(b)(6) witness for deposition" on the issues that Mr. Li would have addressed. *Id*. at 5-6. In subsequent discussions, Contec proposed to have its President and Chairman of the Board, James Hu, act as its damages 30(b)(6) witness in place of Mr. Li's testimony. But as Choice indicated and Contec admitted during the hearing, the same Mr. Hu has *already* repeatedly deferred to Mr. Li on questions regarding Contec's dealing with U.S. customers during his prior deposition on August 18, 2020. (Ex. 3 at 4:5-13, 6:6-15.)

Also relevant to Mr. Hu's suitability as a "replacement" for Mr. Li is that the public record reflects that Mr. Hu has a personal, specific financial interest in the outcome of this litigation. He formally promised the Chinese securities commission, in writing, before it approved Contec's recent IPO that "if the court eventually orders Contec Medical and Contec USA to compensate Beijing Choice for any damages, or that Contec Medical and Contec USA have any financial obligation to compensate as a result of settlement with Beijing Choice, I pledge to personally bear such obligation to compensate voluntarily." (*See* **Exhibit A** [Translation of Contec IPO Prospectus, Final Version Dated Aug. 14, 2020] to **Exhibit 5** [Declaration of Xiaotong Wang], at p. 6.) And Mr. Hu is the largest shareholder of Contec's publicly issued stock, holding 46.84% as of April 2021. (*See* Ex. A [Translation of Contec April 2021 Annual Report] to Ex. 5, p. 8.) These facts shed light on Contec's insistence on Mr. Hu being the sole source of testimony about the critical damages issues in this case—rather than permitting Choice discovery from witnesses with personal knowledge of the facts, like Mr. Li.

## V. THE OCTOBER 14 STATUS CONFERENCE

The Court scheduled a status hearing on October 14, 2021, during which the Court asked Contec's counsel "for the record" when they first became aware that Mr. Li was leaving. (Ex. 3 at

3:2-3.) Contec's counsel responded that the "exact date" was September 13th—*before* Mr. Li's departure and *before* the September 15 status report—not September 29th, as Contec had previously represented to the Court (in the October 5th joint status report) and Choice (during the September 30th meet and confer). (*Id*. at 3:4-10.) Contec's counsel's pretense for not disclosing Mr. Li's departure to Choice or the Court was that Contec's CEO "was trying to persuade Mr. Li to stay with the company." (*Id*. at 11:9-13.)

In response, the Court stated that it was "pretty troubled by these facts," since they imply "a willful evasion of the Court's decision" and pose the question of "why counsel would submit a status report in the form that was submitted when you knew that the witness, in fact, was not going to be available." (*Id.* at 7:10–17.) The Court also stated that there was "no excuse" for Contec and its counsel "not to have immediately informed" Choice and the Court about Mr. Li's intention to leave the company. (*Id*. at 13:18-19.) The Court added "[f]or the life of me, I don't understand that. I don't understand the company, I don't understand the company not immediately informing counsel, but I really don't understand why counsel didn't immediately inform me and the other side . . . ." (*Id.* at 8:25–9:6.) The court also stated that it was "all very convenient for your client that this occurred the way it did." (*Id*. at 13:16-17.)

The Court further noted that it had been "very protective of your client's, you know, concerns about COVID," but that when the Court finally ordered the deposition to proceed "suddenly the witness is resigning from the company and is no longer available to anybody. . . I mean, that may -- there may be consequences for that, depending on what the record shows." (*Id*. at 12:2-12.) The Court also said that "I think I agree that if I were sitting where [Choice] counsel is sitting, I would file a motion for sanctions, too." (*Id.* at 9:8–9.)

**ARGUMENT**

The misconduct of Contec and its counsel severely prejudiced Choice and demands a significant sanction. This Court's authority to sanction party misconduct arises from multiple sources. First, the Court has an "[i]nherent power to impose sanctions for the abuse of the judicial system." *Buonauro v. City of Berwyn*, No. 08 C 6687, 2011 WL 3754820, at *4 (N.D. Ill. Aug. 25, 2011). Second, Rule 37(b) provides that if a party "fails to obey an order to provide or permit discovery," a court may issue a "further just order," including taking facts as established for purposes of the action and requiring the party to pay the moving party's expenses. Fed. R. Civ. P. 37(b)(1); *see also MemberSelect Ins. Co. v. Electrolux Home Prods., Inc.*, No. 13 cv 4097, 2015 WL 6083201, at *9 (N.D. Ill. Oct. 15, 2015) (stating that Rule 37(b) "provides for a payment of attorneys' fees and costs, as well as variety of increasingly serious merits-based sanctions up to and including entry of a default judgment"). Finally, 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Courts have "significant flexibility" in imposing sanctions. *Boveri v. Consensys, Inc.*, No. 19 CV 50226, 2021 WL 1165086, at *4 (N.D. Ill. Mar. 26, 2021) (quoting *Saigado by Saigado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998)). And courts consider several factors in imposing sanctions, including "the prejudice to the moving party caused by the conduct, the prejudice to the judicial system, the need to punish the disobedient party, and the need to deter similar conduct in the future." *Id*.

Based on Contec's and its counsel's egregious misconduct, this Court should exercise its broad discretion to: (1) order Contec to pay Choice the costs of bringing this motion; (2) issue a report and recommendation that Choice be granted an adverse inference that Mr. Li's testimony

would have been unfavorable to Contec on the issue of damages; and (3) impose monetary sanctions of Contec's counsel.

### I. CONTEC'S MISCONDUCT WARRANTS THE IMPOSITION OF SERIOUS SANCTIONS

This Court should impose sanctions on Contec for its violations of this Court's discovery orders compelling Mr. Li's deposition. *See Boveri*, 2021 WL 1165086 at *4 (stating that Rule 37(b) "grants district courts the power to impose appropriate sanctions for the violation of discovery orders"). Specifically, on February 17, 2020, then-presiding Judge Ellis ordered Contec to produce Mr. Li for a deposition. (Dkt 206.) While the Court deferred the deposition due to the ongoing COVID-19 pandemic, it never rescinded its order requiring Contec's production of Mr. Li. To the contrary, this Court entered an order on September 23, 2021 again compelling Mr. Li's deposition, unaware that Mr. Li had already left the company. Contec's failure to notify Choice or the Court that Mr. Li was leaving the company and would be permanently unavailable for a deposition violated and fundamentally frustrated this Court's orders compelling his deposition.[1]

In addition, "[t]he Federal Rules of Civil Procedure place a duty of candor on parties" that is "enforced on pain of sanctions." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 945 (N.D. Ill. 2021). That duty required Contec, at a minimum, to inform Choice and the Court that Mr. Li—a crucial witness whose deposition Choice had been attempting to take for almost two years—was resigning from the company, precluding his later deposition given that compulsory process is unavailable in mainland China, where he resides. Yet notwithstanding that duty, Contec chose to conceal Mr. Li's departure until *after* he had resigned and was no longer available to sit for a deposition. Not only that, Contec (through its counsel) also filed two separate

---

[1] No dispute exists that once Mr. Li left Contec's control, he was virtually impossible to depose because it is simply not possible to enforce an individual deposition subpoena in China relating to a foreign lawsuit.

status reports with the Court in which it raised certain logistical issues that supposedly prevented Mr. Li's deposition from proceeding, without saying a word that Mr. Li's employment was ending. Contec's only justification for that failure is that its CEO was trying to talk Mr. Li out of leaving. (Oct. 14 Tr. 11:9-13.) But as the Court aptly noted, "[t]here's no guarantee that was going to be successful," and "at that point the state of play was that he intended to resign . . . ." (*Id*. at 11:14-20.) Contec's and its counsel's actions clearly violate this Court's orders and blatantly disregard their duty of candor.

Contec's disregard of its obligations has caused Choice significant prejudice, which occurs "when the lost evidence prevents a party from using evidence essential to its underlying claim." *See Buonauro*, 2011 WL 3754820 at *10. As noted above, Mr. Li was the most important witness on damages issue in this case. He was the Contec employee most knowledgeable about Contec's sales and marketing efforts in the United States and thus possessed substantial information relevant to the calculation of Choice's damages.

While Contec has since offered to present Mr. Hu as a 30(b)(6) witness on the same topics, Mr. Hu is inherently biased due to his personal financial interest directly tied to the outcome of this litigation. More importantly, he does not have—and cannot obtain—the personal knowledge that Mr. Li had. That is not speculation. Choice already deposed Mr. Hu once in this matter, during which he repeatedly deferred to Mr. Li regarding Contec's U.S. sales and marketing efforts. Nor can Mr. Hu fully educate himself regarding those matters. Mr. Li's knowledge left with him. As just one example, Contec has already admitted that Mr. Li was the only employee who knew about communications between U.S. customers and Contec employees who have since left the company. (Dkt. 217 at 6.) Contec has thus materially impeded Choice's ability to prove its case.

This Court should therefore sanction Contec for its violation of this Court's orders and its duty of candor.

## II. THIS COURT SHOULD ORDER CONTEC TO PAY MONETARY SANCTIONS AND ISSUE A REPORT AND RECOMMENDATION OF AN ADVERSE INFERENCE

With respect to the form of sanctions, this Court should impose both monetary sanctions and recommend an adverse inference that Mr. Li's testimony would have been unfavorable to Contec on the issue of damages.

Courts in this district regularly impose monetary sanctions on parties who fail to fulfill their discovery obligations. *See Boveri*, 2021 WL 1165086 at *4 (ordering party to pay reasonable attorneys' fees for non-compliance with discovery obligations); *DR Distribs.*, 513 F. Supp. 3d at 969 (awarding attorneys' fees for party's failure to comply with discovery orders); *Life After Hate, Inc. v. Free Radicals Project, Inc.*, No. 18 C 6967, 2020 WL 5848429, at *5 (N.D. Ill. Oct. 1, 2020) (awarding attorneys' fees in light of Defendants' "pattern of deceptive behavior"). This Court should likewise order Choice to pay Contec for the fees and costs it incurred in bringing this motion and submitting the last two status reports, all of which are the direct result of Contec's failure to disclose Mr. Li's departure.

In addition, an adverse inference is available where a party acts in bad faith as Contec did here. An adverse inference "can be shown by conduct that is either intentional or reckless." *Weitzman v. Maywood, Melrose Park, Broadview School Dist. 89*, No. 13 C 1228, 2014 WL 4269074, at *2 (N.D. Ill. Aug. 29, 2014). Courts regularly grant an adverse inference where the opposing party intentionally fails to preserve relevant evidence. *See Buonauro*, 2011 WL 3754820 (holding that party acted in bad faith when it erased tapes on four separate occasions over 18 months and granting adverse inference); *Johnson v. Nichols*, 2013 WL 4052468, at *3-4 (N.D. Ill. Aug. 12, 2013) (stating that court would grant adverse inference based on destruction of videotape

{9923993:2}                                        12

assuming defendants proved by preponderance at trial that plaintiff destroyed video in bad faith); *Weitzman*, 2014 WL 4269074 at *4 (granting adverse inference for spoliation of evidence). And that is exactly what happened here.

Contec and its counsel both acted in bad faith and failed to preserve evidence that could have been discovered from Mr. Li's deposition. Mr. Li informed Contec of his intended departure nearly a month in advance of the September 15 status report, giving Contec ample time to inform both Choice and the Court. As the Court stated, "the first thing you do is call [opposing] counsel." (Ex. 3 at 11:21-22.) Yet Contec did not do so. Contec allegedly informed its counsel on September 13th, the day before Mr. Li left. It then authored a declaration the next day supporting the September 15 status report, which declaration raised certain purported logistical issues with Li's deposition but failed to mention the irrelevancy of those logistical issues because of Li's upcoming departure and resultant unavailability as a witness. Contec's counsel similarly admits that it filed a September 15, 2021 status report that did not mention Mr. Li's departure, even though counsel admits it knew of his departure at least two days prior. As the Court correctly noted, "[a]ll this seems to me to be a willful evasion of the Court's decision . . . . " (Ex. 3 at 7:10-17.) Thus, Contec's willful bad faith supports the sanction of an adverse inference that Li's testimony would have been detrimental to Contec, and this Court should issue a report and recommendation of that sanction.

### III. THIS COURT SHOULD IMPOSE MONETARY SANCTIONS ON CONTEC'S COUNSEL

Finally, this Court should impose monetary sanctions on Contec's counsel for knowingly participating in Contec's concealment of Mr. Li's departure.

"The Court's inherent power [to impose sanctions] extends to misconduct by a party's lawyers." *Cavelle v. Chicago Transit Auth.*, No. 17-cv-5409, 2020 WL 133277, at *3 (N.D. Ill. Jan. 13, 2020). "Lawyers have a duty of candor to the tribunal" and "violations of this duty can

lead to sanctions even more severe than payment of an opponent's fees and costs." *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067 (7th Cir. 2000). Indeed, "[c]ounsel have a continuing duty to inform the Court <u>of any development which may conceivably affect the outcome of the litigation</u>." *Id*. at 1067-68 (emphasis added) (affirming imposition of sanctions on attorney for failing to disclose state-court litigation).

In addition, Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[S]anctions against an attorney are warranted under Section 1927 where that attorney has acted in an objectively unreasonable manner by engaging in a 'serious and studied disregard for the orderly process of justice . . . .'" *Cavelle*, 2020 WL 133277 at *3.

Contec's counsel violated their duty of candor and acted in an objectively unreasonable manner in at least two respects. First, despite being informed by their client on September 13, 2021 (the day *before* Mr. Li left the company), Contec's counsel filed a status report on September 15th in which it wholly failed to reference Mr. Li's departure instead of immediately informing Choice or the Court of that fact. This violated Contec counsel's duty under controlling Seventh Circuit law to "inform the Court <u>of any development which may conceivably affect the outcome of the litigation</u>." *Cleveland Hair Clinic*, 200 F.3d at 1067. So the Court properly took issue with this behavior, stating "[t]here is no excuse for counsel not to have immediately informed the other side and the Court about this witness' intention to leave the company." (Ex. 3 at 8:25-9:2.) It was not until September 30, 2021—two weeks after Mr. Li left the company—that Contec finally revealed the truth to Choice.

Contec's counsel then compounded their lack of candor by lying to Choice and the Court about the exact timing it was informed of Li's departure. In the parties' September 30th meet and confer, Contec's counsel stated they only recently became aware of it and then in the joint October 5, 2021 status report, Contec's counsel affirmatively stated that they "did not learn of [Mr. Li's] departure until September 29, 2021." (Dkt. 256 at 5.) That was proven untrue by counsel's own confession to the Court at the October 14, 2021 hearing that they actually learned on September 13, not September 29. That admission came only after the Court directly asked "for the record when counsel became aware of that fact [of Mr. Li's departure]." (Ex. 3 at 3:2-10.)

Simply put, Contec's counsel was not candid with this Court and with Choice, and their lack of candor contributed to the prejudice that Choice has suffered. This Court should award monetary sanctions against Contec's counsel to compensate Choice for counsel's objectively unreasonable conduct and to deter future acts of wrongdoing.

## CONCLUSION

For the foregoing reasons, this Court should grant Choice's motion for sanctions and should enter an order (1) imposing monetary sanctions on Contec; (2) recommending an adverse inference that Mr. Li's testimony would have been unfavorable to Contec on the issue of damages; and (3) imposing monetary sanctions on Contec's counsel.

Dated: October 27, 2021

Respectfully submitted,

*/s/ Stephen J. Rosenfeld*
Stephen J. Rosenfeld
MCDONALD HOPKINS LLC
300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone: (312) 280-0111
srosenfeld@mcdonaldhopkins.com

Mandy J. Song (*pro hac vice*)
Philip Z. Wang (*pro hac vice*)
Anita Bhushan (*pro hac vice*)

{9923993:2}　　　　　　　　　　　15

Kris Teng (*pro hac vice*)
BAYES PLLC
8260 Greensboro Drive, Suite 625
McLean, VA 22102
Phone: (703) 995-9887
Fax:    (703) 821-8128
mandy.song@bayes.law
philip.wang@bayes.law
anita.bhushan@bayes.law
kris.teng@bayes.law

Kathleen A. Daley (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001
Phone: (202) 408-4000
Fax:    (202) 408-4400
kathleen.daley@finnegan.com

*ATTORNEYS FOR PLAINTIFF BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD.*

## CERTIFICATE OF SERVICE

This is to certify that on October 27, 2021, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

Dated: October 27, 2021

Respectfully submitted,

/s/ *Stephen J. Rosenfeld*
Stephen J. Rosenfeld
MCDONALD HOPKINS LLC
300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone: (312) 280-0111
srosenfeld@mcdonaldhopkins.com

Mandy J. Song (*pro hac vice*)
Philip Z. Wang (*pro hac vice*)
Anita Bhushan (*pro hac vice*)
Kris Teng (*pro hac vice*)
BAYES PLLC
8260 Greensboro Drive, Suite 625
McLean, VA 22102
Phone: (703) 995-9887
Fax:    (703) 821-8128
mandy.song@bayes.law
philip.wang@bayes.law
anita.bhushan@bayes.law
kris.teng@bayes.law

Kathleen A. Daley (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001
Phone: (202) 408-4000
Fax:    (202) 408-4400
kathleen.daley@finnegan.com

*ATTORNEYS FOR PLAINTIFF BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD.*

{9923993:2 }