# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD., ) ) ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:18-cv-00825 |
| ) | |
| CONTEC MEDICAL SYSTEMS USA INC. and ) CONTEC MEDICAL SYSTEMS CO., LTD., ) | Honorable Franklin U. Valderrama Magistrate Judge Susan E. Cox |
| ) | |
| Defendants. ) | |

## PLAINTIFF BEIJING CHOICE'S RENEWED MOTION FOR ADVERSE INFERENCE AS SANCTION FOR DISCOVERY VIOLATIONS

**\*\* PUBLIC VERSION \*\***

Pursuant to Federal Rule of Civil Procedure 37(b) and this Court's inherent authority, Defendant Beijing Choice Electronic Technology Co., Ltd. ("Choice") hereby renews its motion for an adverse inference and additional fees and costs as discovery sanctions against Defendants Contec Medical Systems USA Inc. and Contec Medical Systems Co., Ltd. (together, "Contec"), and in support thereof states as follows:

## INTRODUCTION

Choice brings this renewed motion for an adverse inference because of Contec's continued flouting of this Court's orders, its blatant failure even to attempt to cure its previously sanctioned conduct, and Choice's recent discovery that Contec's actions in concealing the departure of Tianbao Li (the head of Contec's foreign trade department) were far more egregious than they originally appeared. Despite Contec's claims to this Court that it would cure any prejudice caused by Mr Li's departure through the 30(b)(6) deposition of James Hu (its president and chairman), Mr. Hu arrived at the deposition admittedly and unabashedly unprepared. Equally troubling were Mr. Hu's admissions surrounding Mr. Li's departure that directly contradicted Contec's previous representations to this Court.

Contec promised this Court that Choice would suffer no prejudice from its concealment of Mr. Li's departure because Mr. Li would help Mr. Hu prepare for the 30(b)(6) deposition and would provide Mr. Hu with other information as necessary during the deposition. But Mr. Hu did not prepare for the deposition at all—he testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Indeed, the only "preparation" Mr. Hu did for the deposition was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

And while Mr. Hu reportedly called Mr. Li twice on the first day of the deposition, Mr. Hu admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That is not because Mr. Hu was already an expert on those topics. To the contrary, Mr. Hu could not testify competently on many topics. He candidly admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, one of the most important issues in the entire case. He also repeatedly testified that ▮▮▮▮▮▮▮▮▮▮. So Mr. Hu resorted to testifying based on what he called "▮▮▮▮," by which he apparently means he testified based on how he believes things *should* have happened rather than Contec's actual knowledge of the facts.

Perhaps the only topic that Mr. Hu *could* testify to competently was Contec's bad faith in failing to disclose Mr. Li's impending departure. Mr. Hu admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—contrary to Contec's prior representation to this Court that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Hu also testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, despite Contec's repeated representations to the contrary.

The end result is that Choice knows nothing more about Contec's U.S. sales activities than it knew on the date that Contec belatedly disclosed Mr. Li's departure. And Choice has no future ability to obtain that information, as Mr. Li remains beyond Choice's reach. Choice thus faces the prospect of going to trial—through no fault of its own—without key evidence required to elucidate its damages. Given the undeniable, incurable prejudice that Contec's bad faith has caused, Choice respectfully requests that this Court recommend an adverse inference that Mr. Li's testimony would have been unfavorable to Contec on the issue of damages and award Choice its fees and costs in bringing this renewed motion.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Given the nature of Choice's claims, the details about Contec's U.S. sales and marketing (relating to offer for sale) activities are critical to this litigation. And the key witness on those activities is Contec's long-time Managing Director of International Business, Tianbao Li. Mr. Li headed Contec's 90-person foreign-trade department, which was responsible for communicating with or visiting customers in the United States. As a result, Mr. Li was the single most knowledgeable Contec employee on those operations, and Choice spent about 18 months trying to schedule his deposition.

But on September 30, 2021, Contec disclosed for the first time that Mr. Li had left the company on September 14, 2021, more than two weeks earlier. Contec represented that Mr. Li told Contec about a month before his departure that he intended to leave. Contec also represented then that its counsel learned of Mr. Li's impending resignation the day before it occurred. Yet despite that admitted knowledge, Contec filed a status report in which it discussed various purported logistical challenges with Mr. Li's deposition but never mentioned that the deposition was now impossible because Mr. Li had left the company.

### I. CHOICE'S INITIAL MOTION FOR SANCTIONS

Given Contec's failure to timely disclose Mr. Li's resignation before it occurred, Choice filed a motion for sanctions on October 27, 2021, (ECF # 259), seeking several forms of sanctions, including: (1) an adverse inference that Mr. Li's testimony would have been unfavorable to Contec on the issue of damages; (2) attorneys' fees and costs; and (3) monetary sanctions against Contec's counsel for their failure to disclose Mr. Li's departure timely.

In response, Contec argued sanctions were unwarranted and that "Contec ha[d] taken every possible step to cure any supposed prejudice" based on three assertions to this Court: (1) that Mr. Li would have quit at any time had he been ordered to appear for his deposition during the

pandemic (ECF No. 267 at 11); (2) that Mr. Hu was personally "very familiar with the foreign trade department" (*id*. at 1); and (3) that Contec would adequately prepare Mr. Hu for his upcoming 30(b)(6) deposition with help from Mr. Li (*id.*) Along with Contec's offer to make Mr. Li "available by telephone during the corporate deposition of Mr. Hu" (*Id*. at 11-12), Contec claimed that "there is no possibility of prejudice." (*Id*. at 1.) But Mr. Hu's recent testimony disclosed that all of these Contec "representations" to the Court were actually misrepresentations.

II. **THE COURT RECOMMENDS SANCTIONS AGAINST CONTEC AND ITS COUNSEL BUT RECOMMENDS DENIAL OF CHOICE'S REQUEST FOR AN ADVERSE INFERENCE WITHOUT PREJUDICE**

On December 17, 2021, this Court issued an order recommending that Judge Valderrama grant in part and deny in part Choice's motion for sanctions. The Court recommended that Judge Valderrama bar Contec from using Mr. Li as a witness or use any evidence or communications authored by him (ECF #273 at 9), and award Choice all fees and costs incurred between August 2021 and December 17, 2021 in connection with drafting several status reports, preparing for the status hearing, meeting and conferring with Contec, and briefing the motion for sanctions. The Court also recommended that the Court order Contec's counsel to pay the Court $2,500 as a sanction for counsel's failure to immediately notify Choice and the Court of Mr. Li's departure. (*Id*. at 11-12.)

At the same time, the Court recommended that Judge Valderrama deny Choice's request for an adverse inference "without prejudice to allow discovery to play out and reveal whether Mr. Li's departure prevents Choice from adequately proving its damages at trial." (*Id*. at 10.) The Court based this recommendation mainly on the hope that "Choice may still be able to adequately prove its damages through documentary evidence and testimony from Contec's designated 30(b)(6) witness." (*Id*.) But the Court also recognized that "[i]t remains possible that Mr. Li's departure will stymie Choice's ability to prove its damages, in which case an adverse jury instruction might

be necessary," thus keeping the option open for Choice to renew its request for adverse inference at a later time. (*Id.*)

**III.     CHOICE'S RULE 30(B)(6) DEPOSITION OF MR. HU**

Choice served its initial Rule 30(b)(6) notice of deposition on Contec on January 24, 2020, and, as the Court instructed, an amended Rule 30(b)(6) deposition notice on October 20, 2021, a copy of which is attached hereto as Exhibit A. In the notice, Choice identified several deposition topics related to Contec's U.S. sales and marketing efforts and the activities of its foreign trade department, some examples of which included: (1) Contec's sales and revenues for sales of fingertip pulse oximeters in the U.S. since January 1, 2012; (2) Contec's communications with U.S. distributors and retailers; (3) the identity of Contec's sales representatives and agents who marketed or sold fingertip pulse oximeters in the U.S.; (4) the identity of all retailers Contec sold or attempted to sell products with the accused feature to in the U.S.; and (5) bids that Contec's customers made to retailers or distributors in the U.S. (*Id.*)

Over the course of two days (January 6-7, 2022 (Macau time)), Choice took this Rule 30(b)(6) deposition of Contec. Contec designated Mr. Hu as its sole corporate designee. Copies of the transcripts from that deposition are attached hereto as Exhibits B and C.

Mr. Hu testified that—before Mr. Li's departure—  (Hu Tr., Vol. I, 20:23-21:7.) And it quickly became apparent that, despite Contec's assurances to the Court, Contec had not passed Mr. Li's knowledge about U.S. sales or customers on to Mr. Hu. Indeed, Mr. Hu admitted that ███████. (Hu Tr., Vol. II, 233:3-4.) In fact, ███████ was an understatement as Mr. Hu testified that ███████. (Hu Tr., Vol. I, 10:8-

11.) Mr. Hu also testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Hu Tr., Vol. I, 8:1-9:2.) Although he testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Hu Tr., Vol. I, 9:22-10:3), Mr. Hu was clear that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Hu Tr., Vol I, 8:13-23.)

And when Choice questioned Mr. Hu on the first day of the deposition about what he did to prepare for the deposition, Mr. Hu never claimed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. It was not until the end of the second day of deposition during Contec's redirect of Mr. Hu—after Contec or its lawyers apparently "refreshed" Mr. Hu's recollection—that he suddenly reversed course, saying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Hu. Tr., Vol. II, 232:6-17.) Asked to account for the discrepancy, Mr. Hu voluntarily revealed he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Hu Tr., Vol. II, 245:10-246:5.) Mr. Hu also testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Hu Tr., Vol. II, 246:14-21.) As a result, Mr. Hu ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Hu Tr., Vol. II, 247:4-11.)

And while Contec informed the Court that Mr. Li would be available by phone to assist Mr. Hu in answering questions, Mr. Li imparted no substantive information to Mr. Hu during the deposition. Mr. Hu did not call Mr. Li about any specific pending question. Instead, he claimed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Hu Tr., Vol. I, 38:18-39:12; 76:3-77:1) On the first occasion, Mr. Hu admitted he

███████████████████████████████████████. (*See*, *e.g.*, Hu Tr., Vol. I, 70:20-71:7) ("Q: … ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████"). On the second, he testified that ███████████████

█████████████████. (Hu Tr., Vol. 1, 76:3-77:1). As a result, Mr. Hu did not identify *any* additional information he learned from Mr. Li, either before or during the deposition.

Nor did Mr. Hu have an independent grasp of the relevant facts. He repeatedly testified about ████████████████ and said that ██████████████████████████████ █████████. (Hu Tr., 248:24-249:2 ("█████████████████████████ █████"); Hu Tr., Vol. II, 133:13-20 ("███████████████████████"); Hu Tr., Vol. II, 249:18-19 ██████████████████████████████); Hu Tr., Vol. II, 251:18-19 ████ ████████████████████████████████████████████"). As Mr. Hu stated, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ (Hu Tr., Vol. II, 255:13-256:9.)

Instead, as that last answer shows, Mr. Hu prepared himself based on "████████," which appears to mean the actions Mr. Hu believes should have occurred, not facts. (Hu Tr., Vol. I, 107:13-108:12.) Mr. Hu himself admitted, ██████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (Hu Tr.,

Vol. I, 107:18-108:12; *see also* Hu Tr., Vol. II, 234:3-5 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ").); Hu Tr., Vol. II, 256:2-6 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Mr. Hu's poor preparation and poor memory meant that he was unequipped to address several key topics included in Choice's notice. Without limiting the scope of the adverse inference Choice is seeking, below are examples of key topics Mr. Hu could not testify competently to:

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Hu Tr., Vol. I, 89:14-24; 106:7-11; Hu Tr., Vol. II, 193:4-6);

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Hu Tr., Vol. II, 150:10-151:5; 188:7-189:2; 190:2:191:18));

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Hu Tr., Vol. I, 48:22-49:23);

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Hu Tr., Vol. I, 51:23-52:3);

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Hu Tr., Vol. 1, 75:4-9); and

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Hu Tr., Vol. I, 24:11-15; 32:21-33:10).

What is worse, Mr. Hu did not seem to understand his role as Contec's corporate designee. He repeatedly declined to answer questions, claiming ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇ (*See e.g.*, Hu Tr., Vol. I, 92:4-24; Hu Tr., Vol. II, 150:10-21.) With that mindset, he asked Choice counsel ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇ (Hu Tr., Vol. I, 92:4-24; Hu Tr., Vol. I, 33:22-34:2; *see also* Hu Tr., Vol. I,

55:18-56:4) ███████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████.");

(Hu Tr., Vol. I, 60:6-20; Hu Tr., Vol. I, 89:22-24.) But when Choice asked Mr. Hu where such information was in the document production, he simply stated: ████████████ (Hu Tr., Vol. I, 93:2-5); *see also* (Hu Tr., Vol. I, 31:4-20; Hu Tr., Vol. I, 91:1-16) ████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████)

While unable to testify to the U.S. sales and marketing related topics, Mr. Hu did provide certain details related to Mr. Li's departure, shedding new light on Contec's misconduct. Mr. Hu testified that ████████████████████████████████████████████████████████████

████████████████. (Hu Tr., Vol. I, 111:20-112:7.) Mr. Hu also testified ████████████

████████████████████████████████████████ (Hu Tr., Vol. I, 115:4-8), and

████████████████████████████████████████████████████. (Hu Tr., Vol. I, 116:2-6.) And Mr. Hu testified that ████████████████████████████████████████

████████████████████████████████████████. (Hu Tr., Vol I, 114:4-20, Vol. II, 134:14-135:8.) All of that testimony directly contradicts the representations Contec and its counsel previously made to the Court, further unveiling Contec's bad faith.

## ARGUMENT

The Court has an "[i]nherent power to impose sanctions for the abuse of the judicial system." *Buonauro v. City of Berwyn*, No. 08 C 6687, 2011 WL 3754820, at *4 (N.D. Ill. Aug. 25, 2011). In addition, Rule 37(b) provides that if a party "fails to obey an order to provide or permit discovery," a court may issue a "further just order," including taking facts as established for purposes of the action and requiring the party to pay the moving party's expenses. Fed. R. Civ. P.

{10084799:2 }  9

37(b)(1). Courts have "significant flexibility" in imposing sanctions. *Boveri v. Consensys, Inc.*, No. 19 CV 50226, 2021 WL 1165086, at *4 (N.D. Ill. Mar. 26, 2021. And courts consider several factors in imposing sanctions, including "the prejudice to the moving party caused by the conduct, the prejudice to the judicial system, the need to punish the disobedient party, and the need to deter similar conduct in the future." *Id*.

An adverse inference is available when a party acts in bad faith, which "can be shown by conduct that is either intentional or reckless." *Weitzman v. Maywood, Melrose Park, Broadview Sch. Dist. 89*, No. 13 C 1228, 2014 WL 4269074, at *2 (N.D. Ill. Aug. 29, 2014). As Choice noted in its initial motion for sanctions, Courts regularly grant an adverse inference where the opposing party intentionally fails to preserve relevant evidence. (ECF #259 at 12-13) (collecting cases).

An adverse inference is warranted here because Mr. Hu's deposition confirmed that Contec acted in bad faith and it caused Mr. Li's knowledge to be fully beyond Choice's reach. Even after being sanctioned, Contec did not educate Mr. Hu (either before or during the deposition) on— among other things—Contec's knowledge of the relevant topics or facts known to Mr. Li about those topics. As a result, Mr. Hu could not testify competently on any of the relevant topics. This Court should thus recommend that Judge Valderrama grant an adverse inference because it is now the only way to cure the prejudice that Choice has suffered in losing Mr. Li's knowledge about Contec's U.S. sales and marketing activities as a result of Contec's bad faith. This Court should also award Choice its fees and costs in bringing this motion. *See* Fed. R. Civ. P. 37(b).

I. **CONTEC NEITHER EDUCATED MR. HU REGARDING MR. LI'S KNOWLEDGE NOR OTHERWISE REGARDING CONTEC'S U.S. SALES AND MARKETING ACTIVITIES**

"By its very nature, a Rule 30(b)(6) deposition notice requires the responding party to prepare a designated representative so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity." *Hunter*

*v. WirelessPCS Chicago LLC*, No. 18 CV 980, 2021 WL 4621889, at *7 (N.D. Ill. Oct. 5, 2011). "Although Rule 30(b)(6) is not designed to be a memory contest, the corporation has a duty to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects." *Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, No. 13 C 50041, 2013 WL 3672964, at * (N.D. Ill. July 12, 2013).

Notably, under Rule 30(b)(6), "a corporation is required to educate its designee concerning all reasonably available information, even if such information is not within the knowledge of the corporation's current employees." *Chicago Regional Council of Carpenters Pension Fund v. Woodlawn Community Development Corp.*, No. 09 CV 3983, 2011 WL 6318605, at *4 (N.D. Ill. Dec. 15, 2011) (citations and internal quotations omitted). Contec did not come close to satisfying this obligation and further sanction is warranted. *Woodlawn*, 2011 WL 6318605 at *5; *see also Hunter*, 2021 WL 4621889 at *10 ("The failure to produce an educated Rule 30(b)(6) designee is tantamount to a failure to appear and warrants the imposition of sanctions under Rule 37(d) . . . .").

### A. Contec Did Not Educate Mr. Hu Regarding Mr. Li's Knowledge Of The Relevant 30(B)(6) Topics

In responding to Choice's motion for sanctions, Contec informed the Court that Choice had suffered no prejudice because Contec could easily pass Mr. Li's knowledge on to Mr. Hu. Contec said that Mr. Li would "assist Mr. Hu with preparation for the deposition," and that Mr. Li would be available by phone during the deposition to provide Mr. Hu with additional information necessary to respond to Choice's questions. (Opp. at 1.) Contec claimed that this procedure would give Choice "the benefit of Mr. Li's personal knowledge, if not his personal testimony," such that there was "no possibility of prejudice." (*Id.*)

None of that occurred. While ████████████████████████

████ Indeed, ████

████. (Hu Tr., Vol. II, 247:4-11.) By Mr. Hu's own admission, ████

████

Nor did Mr. Li provide Mr. Hu with any information during the deposition itself. Mr. Hu purportedly called Mr. Li twice during the entirety of the two-day deposition. Both phone calls occurred relatively early on the first day of the deposition. In neither instance ████ ████ (Hu Tr., Vol. I, 70:20-71:7; 76:3-77:1). Choice thus did not get "the benefit of Mr. Li's personal knowledge," as Contec promised. (ECF # 267 at 1.) Instead, Mr. Li and his knowledge remain firmly outside Choice's reach.[1]

### B. Contec did not Otherwise Educate Mr. Li Regarding the Activities of Contec's Foreign Trade Department

Nor did Contec otherwise educate Mr. Hu about the institutional knowledge reasonably available about Contec's U.S. sales and marketing activities. To put it mildly, Contec took an unorthodox approach to prepare Mr. Hu for his deposition. The preparation apparently took place in a single remote session. Mr. Li testified that ████ ████. (Hu Tr., Vol. II, 245:10-246:5.) And Mr. Hu volunteered without prompting that ████ ████. (*Id*.) Apparently, in light of his ████ coupled with his acknowledged ████, Mr. Hu had learned nothing during that—his only—preparation session.

That unusual remote session was the *entirety* of Contec's efforts to educate Mr. Hu. He testified that ████. (Hu Tr.,

---

[1] Contec may attempt to claim that Mr. Li's lack of presence caused no prejudice because Mr. Hu testified that ████ ████. (*See, e.g.*, Hu Vol. I, 76:3-77:4.) Contec would be wrong in such a contention because (i) Choice has no way of determining whether Mr. Li was—in fact—even called or what he was actually asked; (ii) Choice has no way of following up on the alleged questions to procure what knowledge Mr. Li does have on the topics; and (iii) Choice has no way of attempting to refresh Mr. Li's alleged lack of knowledge through documents.

Vol. I, 10:8-11.) Nor did he ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Hu Tr., Vol. I, 8:7-9:2, 9:22-10:3.) It is no surprise, then, that Mr. Hu conceded ▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, one of the most important issues in the entire case. (Hu Tr., Vol. II, 233:3-4.) Even leaving aside Contec's failure to impart Mr. Li's knowledge to Mr. Hu, its efforts to prepare Mr. Hu for the deposition fell far below the standards that Rule 30(b)(6) requires. *See Hunter*, 2021 WL 4621889 at *10-11 (granting motion to compel and sanctions where witnesses testified as to their own lack of preparation and were unable to answer basic questions).

## II. MR. HU COULD NOT TESTIFY COMPETENTLY TO CONTEC'S U.S. SALES AND MARKETING ACTIVITIES

Given his inadequate preparation, it is no surprise that Mr. Hu's testimony about Contec's U.S. sales activities was incomplete and inadequate. As noted above, Mr. Hu could not provide meaningful testimony on numerous 30(b)(6) topics, e.g.: (1) Contec's communications and meetings with U.S. customers, including CVS and Wal-Mart; (2) the competitors in the relevant market; (3) the market share of the relevant players; (4) the time periods during which Contec was selling specific products into the United States; and (5) the organization of Contec's foreign trade department. He candidly admitted ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Hu Tr., Vol. I, 248:24-249:2; Hu Tr., Vol. II, 133:13-20, 249:18-19, 251:18-19, 255:13-256:9.) Instead, for many key questions related to U.S. sales and marketing, Mr. Hu simply declined to answer, asking Choice to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Hu Tr., Vol. I, 92:4-93:5; *see, e.g.*, *id.* at 24:14-15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓), 50:20-22 (same), 51:14-15 (same), 122:7-8 (same), 131:7 (same), 134:4-6 (same), 139:5-6 (same), 150:17-18 (same), 180:4-5 (same), 216:1 (same)). For those questions he appeared to provide

answers, Mr. Hu attempted to rely on ▓▓▓▓▓▓," meaning what he believed should have occurred. (Hu Tr., Vol. II, 234:3-5) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).) It is therefore unclear whether Choice was receiving factual testimony at all during the deposition or simply the speculation of a witness who did not know the actual facts. Indeed, Mr. Hu's testimony contradicts with Contec's own interrogatory responses, representations made in various briefings Contec submitted to the court, and sworn declarations submitted by Contec employees, including Mr. Hu himself. In any event, Mr. Hu's testimony was insufficient to provide Choice with the information reasonably available to Contec about Contec's sales and marketing activities in the U.S.

### III. THIS COURT SHOULD RECOMMEND AN ADVERSE INFERENCE TO CURE THE PREJUDICE CHOICE HAS SUFFERED AS A RESULT OF MR. LI'S UNDISCLOSED DEPARTURE AND SHOULD AWARD CHOICE ITS FEES AND COSTS

As the Court stated in denying without prejudice Choice's request for an adverse inference, "[i]t remains possible that Mr. Li's departure will stymie Choice's ability to prove its damages, in which case an adverse jury instruction might be necessary." (ECF # 273 at 10.) That is now the precise situation in which Choice finds itself. Choice deposed an unprepared corporate witness who gained no meaningful information from a previously noticed and now unavailable 30(b)(1) witness (Mr. Li) and could not answer specific questions on various crucial topics. As a result, Contec has hamstrung Choice's ability to prove its damages.

Mr. Hu also confirmed that Contec's bad faith and misconduct were even worse than Contec had originally led the Court to believe. He contradicted many Contec's prior representations on critical issues underlying the sanctions, testifying that: (1) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—not ▓▓▓▓▓▓▓, as Contec originally claimed; (2) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—again contrary to Contec's and Mr. Hu's prior sworn declarations; and (3) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

██████████████████████████████████████████████████, so her claim in her declaration to court that ████████████████████████████████████ was false and that ████████████████████████████ was likely also false. (Hu Tr., Vol. I, 111:20-112:7; 114:4-20, 115:4-8; 116:2-6.)

Choice respectfully submits that an adverse inference is necessary to correct that incurable prejudice from Contec's bad faith and to deter Contec and future parties from placing key witnesses beyond the reach of their opponents and declining to mitigate that misconduct by putting forward a wholly unprepared corporate witness. In addition, Choice requests its fees and costs in bringing this renewed motion, which Choice was forced to bring in light of Contec's continued bad faith in carrying out its discovery obligations. *See* Fed. R. Civ. P. 37(b).

## CONCLUSION

For the foregoing reasons, this Court should grant Choice's renewed motion for sanctions with associated fees and costs and should enter an order recommending an adverse inference that Mr. Li's testimony would have been unfavorable to Contec on the issue of damages.

Dated: January 21, 2022

Respectfully submitted,

*/s/ Stephen J. Rosenfeld*
Stephen J. Rosenfeld
MCDONALD HOPKINS LLC
300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone: (312) 280-0111
srosenfeld@mcdonaldhopkins.com

Mandy J. Song (*pro hac vice*)
Philip Z. Wang (*pro hac vice*)
Anita Bhushan (*pro hac vice*)
Kris Teng (*pro hac vice*)
BAYES PLLC
8260 Greensboro Drive, Suite 625
McLean, VA 22102
Phone: (703) 995-9887
Fax:   (703) 821-8128

mandy.song@bayes.law
philip.wang@bayes.law
anita.bhushan@bayes.law
kris.teng@bayes.law

Kathleen A. Daley (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001
Phone: (202) 408-4000
Fax:     (202) 408-4400
kathleen.daley@finnegan.com

*ATTORNEYS FOR PLAINTIFF BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD.*

## **CERTIFICATE OF SERVICE**

This is to certify that on January 21, 2022, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

Dated: January 21, 2022

Respectfully submitted,

*/s/ Stephen J. Rosenfeld*
Stephen J. Rosenfeld
MCDONALD HOPKINS LLC
300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone: (312) 280-0111
srosenfeld@mcdonaldhopkins.com

Mandy J. Song (*pro hac vice*)
Philip Z. Wang (*pro hac vice*)
Anita Bhushan (*pro hac vice*)
Kris Teng (*pro hac vice*)
BAYES PLLC
8260 Greensboro Drive, Suite 625
McLean, VA 22102
Phone: (703) 995-9887
Fax:    (703) 821-8128
mandy.song@bayes.law
philip.wang@bayes.law
anita.bhushan@bayes.law
kris.teng@bayes.law

Kathleen A. Daley (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001
Phone: (202) 408-4000
Fax:    (202) 408-4400
kathleen.daley@finnegan.com

*ATTORNEYS FOR PLAINTIFF BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD.*