UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD., | |
| Plaintiff, | |
| v. | No. 18-cv-00825 |
| | Judge Franklin U. Valderrama |
| CONTEC MEDICAL SYSTEM USA INC. and CONTEC MEDICAL SYSTEMS CO., LTD., | |
| Defendants. | |

SEALED MEMORANDUM OPINION AND ORDER

Plaintiff Beijing Choice Electronic Technology Co., Ltd. (Choice) filed this patent infringement action against Defendants Contec Medical Systems USA, Inc. and Contec Medical Systems Co., Ltd. (collectively, Contec), alleging infringement of Choice's U.S. Patent No. 8,639,308 (the '308 Patent) entitled "Fingertip Oximeter and a Method of Observing a Measurement Result Thereon." R. 1, Compl.[1] Before the Court is Choice's Motion to Strike Portions of the Collins Patent Invalidity Report. R. 320, Pl.'s Mot. Strike. For the reasons discussed below, the Motion is granted.

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

## Background

### I.    Factual History

Choice is a Chinese corporation that manufactures and sells fingertip pulse oximeters that embody the '308 Patent. Compl. ¶¶ 2–3. Contec USA, an Illinois business, is a subsidiary of Contec China, a foreign corporation, that sells and distributes fingertip pulse oximeters manufactured and imported by Contec China to end users in the United States. R. 50, Defs.' Ans. ¶¶ 4–6, 26. Contec retails and distributes a series of fingertip pulse oximeters, including CMS50D, CMS50D+, CMS50E, CMS50H, CMS50N, and CMS50QB models. *Id.* ¶ 26.

Choice's '308 Patent discloses an oximeter that offers a non-invasive method for measuring the blood oxygen saturation and pulse of the end user. R. 1-1, '308 Patent. More specifically, the '308 Patent provides a fingertip oximeter capable of displaying measurement results in a plurality of modes (e.g., landscape or portrait) such that users may observe the results from any direction without needing to bend their finger. *Id.* As a result, the pulse signals are unimpeded, and the user can obtain a precise measurement. *Id.* The '308 Patent discloses a method for updating the oximeter's measurement display mode through the user pressing down on the power button. *Id.* The '308 Patent was duly and properly issued to Choice by the United States Patent and Trademark Office (USPTO) on January 28, 2014. Compl. ¶ 23. To date, Choice owns the '308 Patent. *Id.* ¶ 24.

The '308 Patent claims the priority date of Chinese Patent Application No. 200610089152.9 (Corresponding Chinese Patent). R. 326, Defs.' Resp. Strike at 2; '308

Patent nt. During the prosecution of the '308 Patent, Choice filed a Request to Participate in the Patent Prosecution Highway (PPH) Program, relying on the Corresponding Chinese Patent.[2] R. 326-2. In August 2018, the Patent Re-Examination Board of the State Intellectual Property Office of China invalidated Choice's Corresponding Chinese Patent for failure to comply with Chinese Patent Law. R. 326-4, Chinese Bd. Decision at 7. The Board's Decision was affirmed by the Chinese Supreme Court. Defs.' Resp. Strike at 2 (citing 326-5, Chinese Supreme Court Order[3]).

Like Choice's '308 Patent, Contec's fingertip pulse oximeters measure pulse oxygen saturation and pulse rate through the user's finger. R. 1-3, CMS50D Manual;

---

[2]The PPH is a program to fast-track patent examination by allowing a patentee to request an accelerated processing of a Chinese application if the claims have been deemed patentable/allowable by another office (e.g., USPTO). The United States Patent and Trademark Office, *Patent Prosecution Highway (PPH) – Fast Track Examination of Applications*, https://www.uspto.gov/patents/basics/international-protection/patent-prosecution-highway-pph-fast-track (last visited Feb. 20, 2023).

[3]The Chinese Supreme Court Order is written in Chinese, with no certified English translation provided. It is a "well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation." *ABC Corp. v. Partnerships & Unincorporated Associations Identified on Schedule A*, 2022 WL 18937941, at *1 (N.D. Ill. Dec. 19, 2022) (cleaned up). For purposes of this Opinion it matters not, as Choice does not contest Contec's characterization of the Chinese Supreme Court Order.

Along the same lines, Contec provides an English translation of the Chinese Board Decision, but it is not clear from the face of the document if it is a certified translation. Chinese Bd. Decision. The parties dispute the import of the Chinese Board Decision; as described herein, the Court agrees with Choice that it does not support Contec's argument in opposition to the Motion to Strike currently before the Court. *See infra* Section I. Because the Court does not rely on the substance of the Chinese Board Decision in deciding the Motion, the Court excuses the fact that it is unclear whether the translation is certified. If any other motions currently pending before the Court depend on the substance of any Chinese document, however, the parties must provide a certified translation in order for the Court to consider them, or the parties must provide authority in support of why a certified translation is unnecessary.

Defs.' Ans. ¶¶ 33–34. Contec's oximeters can display the measurements in a variety of modes (e.g., landscape or portrait) to allow the end user to easily observe the results from any surrounding angle without obstructing the blood flow. CMS50D Manual. To update the measurements display, users must manipulate the power source button. *Id*. Contec China manufactures the oximeters for import into the United States, and Contec USA sells the devices to third-party distributors and retailers from its Illinois facility. Defs.' Ans. ¶¶ 6, 11–12.

## II. Procedural History

This matter involves an extensive procedural history all relating to Contec's alleged patent infringement of Choice's '308 Patent for a fingertip pulse oximeter and methods for updating the display mode of fingertip pulse oximeters.

On January 31, 2018, Choice filed this patent infringement lawsuit against Contec, requesting the Court find the '308 Patent valid and enforceable and enter judgment against Contec for patent infringement. Compl. at 15. In addition, Choice's Complaint requested entry of a preliminary and permanent injunction and other monetary relief. *Id*. Contec seeks to invalidate the '308 Patent. *See* Pl.'s Mot. Strike at 1.

Two days later, Choice filed its Motion for Preliminary Injunction. R. 75, Pl.'s Mot. Prelim. Inj. On July 24, 2018, Contec submitted an expert report by Dr. Robert T. Stone (Stone Declaration) relating to invalidity claims in support of its opposition to Choice's Motion for Preliminary Injunction. R. 84-1, Stone Decl.

In January 2019, pursuant to Local Patent Rule 3.1, Contec served its Final Invalidity Contentions (FIC). R. 320-1, Defs.' FIC. Since January 2019, the parties have conducted fact discovery and exchanged expert reports. *See* R. 117, 307. On August 16, 2022, Contec served the Expert Invalidity Report of Dr. John Collins (Collins Report). R. 324, Collins Report.[4]

Now before the Court is Choice's Motion to Strike, in which Choice moves to strike portions of the Collins Report relating to reasons to combine not previously disclosed in Contec's FIC. Pl.'s Mot. Strike at 1.[5]

## Legal Standard

District courts have broad discretion in enforcing the Local Patent Rules. *Medline Indus., Inc. v. C.R. Bard, Inc.*, 511 F. Supp. 3d 883, 888–89 (N.D. Ill. 2021).

---

[4] The Collins Report was filed under seal. Because this Memorandum Opinion and Order may contain privileged information that was submitted to the Court under seal, the Court will issue its Memorandum Opinion and Order under seal so the parties may meet and confer with one another about proposed redactions. The parties are to file a joint position statement by May 1, 2023, explaining what (if any) redactions are needed in the text of the Opinion, and why (bearing in mind the strict standard against secret filings, *see generally Mitze v. Saul*, 968 F.3d 689 (7th Cir. 2020)). That position statement may be filed under seal. After considering the proposed redactions, the Court will issue a public version of the Memorandum Opinion and Order.

[5] Choice filed a second Motion to Strike the Collins Report of New and Alternative Grounds Not Previously Disclosed in Contec's Final Invalidity Contentions at the same time. R. 318. The parties agreed Contec would amend its FIC to address the issues specifically raised in the second motion, so the second motion to strike was withdrawn. R. 327. Contec served the amended invalidity contentions (Amended FIC) on October 26, 2022. R. 336, Pl.'s Mot. Summ. J. at 2. The parties have not filed anything indicating that the Amended FIC have any bearing on the Motion to Strike currently before the Court, and in the Court's review, none of the portions of the Collins Report concerning this instant matter have been amended.

Simultaneously with the filing of its Reply in support of its Motion for Summary Judgment, Choice filed yet another motion to strike portions of the Collins Report. *See* R. 361. The Court frowns upon multiple motions to strike portions of the same expert report, but will decide that motion in due course in a separate order.

Because each District's Local Patent Rules are "unique to patent cases" and "are likely to directly affect the substantive patent law theories that may be presented at trial, being designed specifically to require parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction," Federal Circuit law governs each court's interpretation of its Local Patent Rules. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (cleaned up)[6]; *see Beckman Coulter, Inc. v. Sysmex Am., Inc.,* 2019 WL 1875356, at \*2 (N.D. Ill. Apr. 26, 2019) (this District's "Local Patent Rules are meant to prevent a shifting sands approach to claim construction by forcing the parties to crystallize their theories of the case early in litigation") (cleaned up).

This District's "Local Patent Rules 'do not specify the actions that the [Court] may or must take if there is non-compliance with the requirements for disclosure of contentions.'" *Medline Indus.*, 511 F. Supp. 3d at 889 (quoting *O2 Micro*, 467 F.3d at 1363). "However, the rules are essentially a series of case management orders, and under [Federal Rule of Civil Procedure] 16(f), the Court may impose any just sanction for the failure to obey a scheduling order, such as prohibiting the disobedient party from supporting or opposing designated claims or defenses . . . ." *Id.* (cleaned up).

The Northern District of Illinois Local Patent Rules (LPR) state in relevant part:

> **LPR 2.3(b)** Invalidity Contentions must contain the following information to the extent then known to the party asserting invalidity: (1) an identification, with particularity, of up to twenty-five (25) items of prior art per asserted

---

[6]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

patent that allegedly invalidates each asserted claim. . . . (2) for each item of prior art, a detailed statement of whether it allegedly anticipates or renders obvious each asserted claim. If a combination of items of prior art allegedly makes a claim obvious, the Invalidity Contentions must identify each such combination, and the reasons to combine such items; (3) a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found . . . .

**LPR 3.1(b)** . . . . Final Invalidity Contentions may rely on more than twenty-five (25) prior art references only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties. For each claim alleged to be invalid, the Final Unenforceability and Invalidity Contentions are limited to four (4) prior art grounds per claim and four (4) non-prior art grounds. . . . Each assertion of anticipation and each combination of references shall constitute separate grounds.

Put simply, LPR 2.3(b) requires that invalidity contentions identify prior art "with particularity." *Peerless Indus., Inc. v. Crimson AV LLC*, 2015 WL 1275908, at *4 (N.D. Ill. Mar. 17, 2015) (citing LPR 2.3(b)(1)).

The goal of LPR 3.1(b) is "to streamline patent litigation by . . . limiting the number of grounds on which a claim of invalidity may be based," but the rule "does not purport to dictate or limit the proof that may be offered in support of a specific example of a claim based on a permissible ground." *Wimo Labs LLC v. Polyconcept N.A., Inc.*, 358 F. Supp. 3d 761, 766 (N.D. Ill. 2019).

At the same time, "[o]ne would not expect [a party] to actually advance, in a summary judgment motion or before a jury, hundreds, or even a hundred, or even several dozen separate bases to invalidate a patent claim." *Oil-Dri Corp. of Am. v. Nestle Purina PetCare Co.*, 2018 WL 2765952, at *2 (N.D. Ill. June 9, 2018). Possible grounds of invalidity include "indefiniteness, lack of written description, lack of

enablement, unenforceability, and non-statutory subject matter under 35 U.S.C. § 101," as well as anticipation and obviousness. LPR 3.1(b).

To prevail on an obviousness ground, one must "identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

To prove that a claim would have been obvious, it is not enough for an accused infringer to demonstrate that two or more prior art references in combination disclose all the claim's elements. *Forest Labs., LLC v. Sigmapharm Labs., LLC*, 918 F.3d 928, 934 (Fed. Cir. 2019) ("An invention is not obvious simply because all of the claimed limitations were known in the prior art at the time of the invention."). The accused infringer generally must also show that there was "a reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success." *Id.* (cleaned up); *see also In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068–69 (Fed. Cir. 2012).

A motivation or reason to combine may be found in, among other things, prior art references or "the background knowledge, creativity, and common sense of the person of ordinary skill." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1359–60 (Fed. Cir. 2017); *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1354 (Fed. Cir. 2013). As such, the Local Patent Rules require when a party contends that "a combination of items of prior art allegedly makes a claim obvious," its final

invalidity contentions "identify each such combination and the reasons to combine such items." LPR 3.1(b), LPR 2.3(b)(2).

Parties may only rely on prior art references that are timely disclosed in final invalidity contentions. *See* LPR 3.3; *AVNET, Inc. v. MOTIO, Inc*., 2016 WL 3365430, at *4 (N.D. Ill. June 15, 2016). In the context of invalidity reports, the Court maintains that "an expert's report may not introduce an argument that the party did not previously set forth in its Final [Invalidity] Contentions." *Medline Indus.,* 511 F. Supp. 3d at 897.[7]

To establish "good cause to amend invalidity or infringement contentions, a party must demonstrate that it acted diligently and that the accused infringer would suffer no unfair prejudice if [it] were permitted to amend." *See* LPR Rule 3.4; *Peerless Indus., Inc. v. Crimson AV LL*C, 2013 WL 6197096, at *5 (N.D. Ill. Nov. 27, 2013) (citing *O2 Micro*, 467 F.3d at 1366–68). "In showing diligence, the relevant inquiry is not when the party learned about the information, but when it could have made the discovery." *Sloan Valve Co. v. Zurn Indus., Inc.,* 2013 WL 622951, at *2 (N.D. Ill. Feb. 20, 2013). "[G]ood cause requires more than a showing that new information has been revealed in discovery." *Fujitsu Ltd. v. Tellabs Operations, Inc.*, 2012 WL 5444979, at *6 (N.D. Ill. Mar. 21, 2012). When the amending party fails to demonstrate diligence

---

[7]Choice cites to a non-binding, out-of-District case in support of the legal standard governing motions to strike invalidity contentions. Pl.'s Mot. Strike at 2 (citing *Cap. Sec. Sys., Inc. v. NCR Corp.*, 2017 WL 2363749, at *7 (N.D. Ga. May 31, 2017) (striking an expert report's obviousness combinations in part because the party's invalidity contentions "failed to identify the motivation to combine each such combination of prior art, as required under Local Patent Rule 4.3(a)(2)")). However, the Court follows the standard set by other courts within this District and finds that it has "broad discretion" to decide motions to strike a party's invalidity contentions. *Medline Indus.*, 511 F. Supp. 3d at 888–89.

in moving to amend, there is "no need to consider the question of prejudice" to the nonmoving party. *O2 Micro*, 467 F.3d at 1368.

In this case, Choice asks the Court to strike portions of Contec's expert report on invalidity where those portions reference new obviousness combination theories that were not previously disclosed in Contec's Final Invalidity Contentions. Pl.'s Mot. Strike at 1.

## Analysis

Choice advances two bases in support of its Motion to Strike portions of the Collins Report. Pl.'s Mot. Strike. at 4, 8. First, Choice argues Contec's FIC contains only generic, legally deficient reason-to-combine theories, which are exceeded by the Collins Report's combination-specific obviousness disclosures. *Id.* at 2–6. Second, Choice asserts that because the Collins Report posits new obviousness combination theories, previously undisclosed in Contec's FIC, the relevant portions of the Report should be stricken. *Id.* 6–9. The Court addresses each argument in turn.

## I.   Exceeding Final Invalidity Contentions

Choice seeks to prevent Contec from overstepping its FIC with subsequent, new combination-specific theories included in the Collins Report. Pl.'s Mot. Strike at 2. Choice contends that Contec's January 2019 FIC are legally insufficient, and thereby violate LPR 3.1(b) and LPR 2.3(b) because Contec failed to identify specific combinations of prior art references and motivations to combine such items. Pl.'s Mot. Strike at 3–4; Defs.' FIC; *see e.g.,* N.D. Ill. LPR 3.1(b) (requiring a party's final invalidity contentions to include the information required by LPR 2.3(b)); LPR 2.3(b)

(where the accused infringer contends that "a combination of items of prior art allegedly makes a claim obvious," this rule requires the infringe to identify "each such combination and the reasons to combine such items").

In support, Choice relies on *KSR*, 127 S. Ct. 1727 and *ActiveVideo Network, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012) to emphasize that general assertions of prior-art combinations do not satisfy obviousness grounds for an invalidity argument. Pl.'s Mot. Strike at 2–4. The principles underlying these cases are instructive when the question is whether a patent claiming the combination of elements of prior art is obvious.

In *KSR*, the Supreme Court reinforced a standard for resolving obviousness issues relating to patentability under 35 U.S.C. § 103(a). 127 S. Ct. at 1727. There, the Supreme Court reaffirmed *Graham v. John Deere Co. of Kansas City*, 86 S. Ct. 684 (1966), as the controlling case on the topic of obviousness. In *Graham*, the Supreme Court enforced an objective obviousness analysis, providing that a "patent claim is only proved obvious if the prior art, the problem's nature, or the knowledge of a person having ordinary skill in the art reveals some motivation or suggestion to combine the prior art teachings." 86 S. Ct. at 694–695; *KSR*, 127 S. Ct. at 1730.

The Supreme Court further explained that an "obviousness groun[d] cannot be sustained by mere conclusory statements" or mere demonstrations that each of the patent's elements were independently known in the prior art. *KSR*, 127 S. Ct. at 1742. However, "a precise teaching directed to the specific subject matter of a challenged claim is not necessary to establish obviousness." *Id.* at 1741. Rather, "there must be

11

some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Id.* at 1742.

In *ActiveVideo*, the Federal Circuit affirmed the lower court's rejection of the defendant's obviousness defense in a patent infringement action. 694 F. 3d at 1328. Following *KSR*, the Federal Circuit found the obviousness testimony by defendant's expert was merely "conclusory" and "factually unsupported," and thus was insufficient. *Id.* The Federal Circuit reasoned, "the expert's testimony on obviousness was essentially a conclusory statement that a person of ordinary skill in the art would have known, based on the . . . nature of the claimed components, how to combine any of a number of references to achieve the claimed inventions." *Id.* (citing *KSR*, 127 S. Ct. at 1741 ("A patent composed of several elements is not proved obvious by merely demonstrating that each of its elements was, independently, known in the prior art."); *Innogenetics, N.V. v. Abbott Labs.,* 512 F.3d 1363, 1373–74 (Fed. Cir. 2008) ("Such vague testimony would not have been helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness.")).

Choice maintains that portions of the Collins Report contain obviousness combinations not contained in Contec's FIC and therefore must be stricken. Choice contends that Contec's FIC do not lend support to the newly disclosed combinations in the Collins Report because the FIC merely disclose general prior-art references and "purported 'motivations to combine' that are not specifically applied and adapted" as required by LPR 3.1(b) and LPR 2.3(b). Pl.'s Mot. Strike at 4.

In support, Choice points out that Contec's FIC refer broadly to the field of fingertip pulse oximeters, discussing three overarching categories of technical features—namely, fingertip-pulse oximeters, rotatable displays, and multi-function buttons—and provide various stock phrases, such as "it would have been obvious for a person of ordinary skill in the art to combine the teachings of the prior art references . . . ." *See* Defs.' FIC at 9–11; Pl.'s Mot. Strike at 8. Further, Choice notes the FIC cite generally to prior art references relating to each broad technical feature, as opposed to disclosing particular combinations of references and the apparent reasons to combine the prior-art elements in the fashion claimed by the '308 Patent. Pl.'s Mot. Strike at 8. According to Choice, the contentions cast vague and conclusory obviousness combinations and motivations that do not comply with the Local Patent Rules, and thereby fail to support the new obviousness combination theories in the Collins Report. *Id*. at 9.

In response, Contec posits that Choice waived any arguments relating to its FIC by "waiting more than three years" to argue the FIC are "inadequate and violate the local patent rules." Defs.' Resp. Strike at 1–3. Contec maintains that Choice's arguments against the FIC are waived under general waiver principles as "last-minute complaints." *Id*. at 2. In the same vein, Contec asserts its FIC are adequate because it "incorporated by reference both the Stone Declaration and the Chinese Board Decision, both of which discussed specific motivations to combine." Defs.' Resp. Mot. Strike at 8.

13

In support of its waiver argument, Contec relies on several of out-of-District cases, including *Illumina, Inc. v. BGI Genomics Co., Ltd.,* 559 F. Supp. 3d 1072, 1084 (N.D. Cal. 2021). *See* Defs.' Resp. Strike at 4. In *Illumina,* the plaintiff Illumina filed a motion to strike two theories in an expert report as allegedly untimely, contending they were not previously raised in contentions or otherwise. *Id.* at *1. However, Illumina did not file its motion to strike until several weeks after the close of fact and expert discovery. *Id.* For this reason, the court denied the motion and reasoned it would not condone Illumina "burying its head in the sand until it was safe to raise the issue of the [allegedly new] theories with the court." *Id.* at *8. By contrast, Choice moved to strike the Collins Report in a timely fashion. Here, the Collins Report was submitted in August 2022, and approximately one month later, in September 2022, Choice filed its Motion to Strike the Collins Report. R. 328, Pl.'s Reply Strike at 2. It was not until December 2022 that discovery was completed. R. 332, Minute Entry (Entered Dec. 2, 2022). Therefore, not only in *Illunima* non-binding authority, it also is inapposite due to the differences in the timeliness of the motions to strike.

Contec also relies on *Charleston Med. Therapeutics, Inc. v. AstraZeneca Pharm. LP,* where the court denied plaintiffs' motion to strike for similar reasons to *Illumina.* 2015 WL 10913613, at *2 (D.S.C. Apr. 16, 2015). Likewise, plaintiffs moved to strike various portions of the opposing party's expert report for failure to previously disclose specific prior-art combinations in its final invalidity contentions. *Id.* However, unlike in this case, where the Local Patent Rules require disclosure of specific prior art combinations and the reasons to combine such items, *see* LPR 2.3(b)(2), the

*Charleston* court noted the "scheduling order [did] not state that [d]efendant must provide specific combinations of prior art," and its district does not have its own standing local patent rules requiring otherwise. 2015 WL 10913613, at *2. Accordingly, the court denied the motion to strike combination references in the expert report. *Id.* Because of the differences in the Local Patent Rules, the Court finds that *Charleston* is not persuasive.

Similarly, Contec's reliance on *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2011 WL 13077073, at *3 (E.D. Wis. Aug. 26, 2011) is misplaced. The issue there was not the adequacy of invalidity contentions pursuant to the Local Patent Rules, but whether the defendant had diligently amended its final invalidity contentions to put plaintiff on notice of its new indefiniteness defense. *See* 2011 WL 13077073 at *2. Here, Choice does not contest its knowledge or notice of Contec's obviousness defense as pled in the FIC; instead, it argues the FIC fail to provide adequate support, as required by the Local Patent Rules, for the new obviousness combinations in the Collins Report.

Contec also cites to *Verinata Health Inc. v. Sequenom Inc.*, 2014 WL 4100638, at *6 (N.D. Cal. Aug. 20, 2014) to support its waiver argument. However, a close examination of *Verinata*, reveals the case actually undermines Contec's opposition to Choice's motion. There, the court granted the plaintiff's motion to strike an expert report and reasoned that, given the applicable local patent rules' disclosure requirements, "a party may not use an expert report to introduce new infringement theories [or] new invalidity theories not disclosed in the [party's] infringement

15

contentions or invalidity contentions." *Id*. at 3 (cleaned up). Although *Verinata* is out-of-District authority and thus is persuasive authority only, the Court finds its reasoning compelling and in line with the holdings of other in-District cases. *See Medline Indus.*, 511 F. Supp. 3d at 897 (an expert's report may not introduce an argument that the party did not previously set forth in its Final [Invalidity] Contentions); *see also AVNET*, 2016 WL 3365430, at *4–5 (relying on LPR 2.3(b)(2) and granting motion to strike paragraphs of expert report that disclosed new combinations of prior art not included in the party's final invalidity contentions) (citing *Pactiv Corp. v. Multisorb Techs., Inc.*, 2013 WL 2384249, at *2 (N.D. Ill. May 29, 2013)).

Moreover, the Court agrees with Choice that Contec's waiver arguments are irrelevant to the issue at hand. Pl.'s Reply Strike at 2. As Choice reiterates in its Reply, the issue is not whether the FIC must be stricken but rather is "whether Contec's invalidity expert report can raise reasons to combine not found in the final invalidity contentions . . . ." *Id*. at 1. Put simply, Choice's motion does not take aim at the robustness of Contec's invalidity contentions themselves. *Id*. Instead, the motion takes issue with the fact that the Collins Report introduces new invalidity combination theories that are not supported by Contec's deficient contentions. *Id*. As such, the Court agrees with Choice that Contec's waiver arguments are unpersuasive.

As to the FIC's compliance with the Local Patent Rules, Contec asserts its FIC are legally sufficient and supported by the Stone Declaration and Chinese Board Decision. Defs.' Resp. Strike at 7. Contec rebuts Choice's argument that its FIC fail

to provide adequate reasons to combine by explaining "the reasons to combine . . . are independent of any specific prior art reference" meaning "the discussed reasons to combine are applicable to *any* prior art reference under the relevant category of technical features." *Id.* at 8 (emphasis added). In other words, Contec concedes that its reasons to combine are not specific to a combination of references (as the Local Patent Rules mandate, *see* LPR 2.3(b)(2)), but instead, are generally applicable to *any* prior reference that falls within the broad technical categories it discusses in its FIC—specifically, fingertip-pulse oximeters, rotatable displays, and multi-function buttons. *Id.*; *see* Defs.' FIC at 9–11. However, the law requires far more—i.e., a combination-specific showing of reasons to combine. *See KSR*, 127 S. Ct. at 1741.

In addition, the FIC make clear the Stone Declaration is merely incorporated to "further illustrate the state of the art at the time of the filing" of the '308 Patent." FIC at 5. Thus, the Stone Declaration is not referenced for purposes of the invalidity defense, but rather to provide technical background on the claimed invention. *Id.* Even so, because the Stone Declaration does not discuss any obviousness references in the context of the '308 Patent, its incorporation does not push Contec's FIC beyond the specificity threshold of the Local Patent Rules and Supreme Court precedent. Pl.'s Reply Strike at 6–7.

Likewise, the Chinese Board Decision provides little support to the sufficiency of Contec's FIC for reasons further discussed below. Pl.'s Reply Strike at 8. In brief, the Chinese Board Decision not only turns on unrelated Chinese Patent Rules, but the combinations therein fail to provide particular obviousness combinations and

reasons to combine as required by this District's Local Patent Rules. *Id*. Thus, Contec's reliance on the Stone Declaration or Chinese Board Decision for its legally deficient FIC is unavailing.

Standing alone, Contec's FIC fail to identify any particular obviousness combination references and reasons to combine relating to the features of the '308 Patent. *See* Defs.' FIC. Following *KSR*, the FIC's reference to general elements of prior-art references in a broad technical field does not adequately support an obviousness defense. 127 S. Ct. at 1741 ("A patent composed of several elements is not proved obvious by merely demonstrating that each of its elements was, independently, known in the prior art."). Moreover, the deficiency of the FIC violates the Local Patent Rules and lends no support to the portions of the Collins Report disclosing new obviousness combination theories. *See* LPR 3.1(b), 2.3(b).

However, as Choice makes clear in its brief, it does not seek to strike Contec's FIC for their deficiency; rather, the insufficient contentions form the basis for Choice's request to strike portions of the Collins Report that add "extensive new reasons not previously disclosed in those contentions to explain why a persona of ordinary skill would have combined the specific items of prior art under each obviousness ground." Pl.'s Mot. Strike at 2.

Contec attempts to distinguish Choice's reliance on *KSR* and *ActiveVideo* by accusing Choice of holding it to a "heightened standard of proof" for its invalidity contentions and requiring Contec to "prove" invalidity with specific evidence. Defs.' Resp. Strike at 11–12. Not so. Rather, Choice cites to the instructive guidance in *KSR*

and *ActiveVideo* on the rules of specific reason-to-combine theories in final invalidity contentions, which Contec's FIC do not meet. For the reasons above, the Court agrees with Choice that Contec's FIC do not raise specific-combination theories, as required by the Local Patent Rules, to support the new invalidity combinations included in portions of the Collins Report.

As such, the Court agrees with Choice that Contec's FIC are deficient on obviousness grounds because they lack specific obviousness combinations and reasons to combine as required under the Local Patent Rules. Pl.'s Mot. Strike at 4–5 (citing LPR 3.1(b) and LRP 2.3(b) (requiring a party's Final Invalidity Contentions to include the information required by LPR 2.3(b)); *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373–74 (Fed. Cir. 2008) (noting the Federal Circuit has consistently indicated that conclusory statements of obviousness by experts are inadequate to support a finding of obviousness). Therefore, the newly disclosed obviousness combinations of the Collins Report improperly exceed Contec's FIC.

In its Reply, Choice agreed to withdraw from its Motion the request to strike Section V of the Collins Report because, as Contec stipulated in its Response, this portion contains no relevant combination-specific reasons to combine. Pl.'s Reply Strike at 3 n.2; Defs.' Resp. Strike at 13–14. Instead, that section discusses prior art related to background technologies. *Id.*

Accordingly, for the reasons discussed above, the Court agrees with Choice that Contec's FIC violate LPR 3.1(b) and LPR 2.3(b) because Contec failed to identify specific combinations of prior art reference combinations and motivations to combine

such items. Thus, the following paragraphs of the Collins Report must be stricken because they exceed the scope of Contec's FIC: ¶¶ 146, 151, 152, 153, 154, 163, 164, 165, 168, 169, 170, 171, 179, 181, 182, 183, 186, 188, 191, 203, 204, 215, 216, 217, 218, 232, 249, 250, 251, 252, 253, 254, 267, 268, 269, 270, 271, 272, 281, 287, 288, 295, 298, 301, 304, 305, 314, 326, 331, 339, 345, 346, 362, 363, 364, 365, 377, 378, 379, 380, 389, 394, 395, 402, 405, 408, 414, 415, 427, 436, 442, 450, 455, 456, 482, 483, 484, 500, 514, 520, 521, 535, 545, 551, 564.

## II. Improper Inclusion of New Combination Theories in Collins Report

For similar reasons to those raised above, Choice next argues that portions of the Collins Report must be stricken because they impermissibly include reasons to combine undisclosed in Contec's FIC. Pl.'s Mot. Strike at 6.

In support of its argument, Choice cites to numerous paragraphs in the Collins Report exemplifying new reference-specific motivations to combine that are unmentioned or unspecified in Contec's FIC. Pl.'s Mot. Strike at 6–9; *see* Collins Report ¶¶ 151, 155, 165, 170, 181, 184, 219, 255, 267, 273, 366, 377, 381, 482, 485, 587, 621.

For example, Contec's FIC include boilerplate phrases explaining "it would have been obvious for a person of ordinary skill in the art to combine the teachings of the prior art references," without mention of particular references to combine. Defs.' FIC at 9. By contrast, the Collins Report specifies "[i]t would have been obvious for a POSITA to configure the button 84 in Chin to control the power of the device, as disclosed in Yun, and include four directional display modes, as disclosed in Ishida."

*See* Collins Report ¶ 151. As Choice points out, and the Court agrees, the level of specificity in the disclosures in the Collins Report exceed the scope of the conclusory combinations and motivations to combine that are discussed in Contec's FIC. Pl.'s Mot. Strike at 6–8.

In response, Contec simply retorts that the Collins Report and its FIC, through its incorporation by reference of the Stone Declaration and Chinese Board Decision, are "identical." Defs.' Resp. Strike at 13. Contec's assertions are blatantly incorrect. A close comparison of the Stone Declaration and Chinese Board Decision reveal no relevancy or support of the new obviousness combinations in the Collins Report. Pl.'s Reply Strike at 6–8.

As an initial matter, none of the combination-specific paragraphs in the Collins Report draw from the Stone Declaration's combination references.[8] Pl.'s Reply Strike at 6–8; *compare* Stone Decl. at 12–21 *with* Collins Report ¶¶ 151, 181, 267, 377, 482. Notably, Contec only incorporates the Stone Declaration for its general description of the state of art at the time of the filing of the '308 Patent. Pl.'s Reply Strike at 6–8. Contrary to Contec's assertions, the Stone Declaration did not offer any reasons to combine, let alone specific obviousness combinations. *Id*. The references and combinations that are found in the Stone Declaration for timing purposes, are

---

[8]For example, the Stone Declaration proposes the combinations of: (1) Isaacson in view of Ishida; (2) Ishida in view of Kobayashi; and (3) Isaacson in view of Ali. On the other hand, the Collins Report proposes combinations of: (1) Chin in view of Ishida and Yun; (2) Isaacson in view of Ishida and Kobayashi and Coffey; or (3) Isaacson in view of Ali and Coffey. Importantly, none of the same combinations are disclosed. *See* Pl.'s Reply Strike at 6–8.

entirely different from the Collins Report and provide no support for any of its new combination theories. *Id*.

Similarly, the Chinese Board Decision provides no support for the Collins Report disclosures. Pl.'s Reply Strike at 7–9. As an initial matter, the Chinese Board Decision turns on the application of Chinese patent law and procedures, which are irrelevant to this proceeding. *Id*. at 1. Still, the Decision provides no support for the new obviousness theories in the Collins Report because the references to combine have no relevancy to the invalidity grounds of the report. *See* Chinese Bd. Decision at 12–14. In fact, the Decision merely includes conclusory statements of how certain elements may be found in the prior art referenced. *Id*. For these reasons, the Stone Declaration and Chinese Board Decision lend no support to Contec's FIC. Importantly, Contec does not dispute that its FIC, alone, included no reasons to combine, and therefore has waived any response on this point. Pl.'s Reply Strike at 1; *see Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010).

Authority from this District makes clear that a subsequent expert report may not introduce new theories relating to invalidity defenses that the party did not previously set forth in its final invalidity contentions. *See Medline Indus.,* 511 F. Supp. 3d at 897. As Choice posits in its Reply, and the Court agrees, the Collins Report falls outside the scope of Contec's deficient FIC, and it appears Contec attempts to cure the deficiency of its FIC by offering a subsequent expert report with robust and legally sufficient obviousness grounds. Pl.'s Reply Strike at 3. This Court will not now permit Contec "to circumvent the disclosure requirements of our Local

22

Patent Rules" by including such theories of invalidity in an expert report. *AVNET*, 2016 WL 3365430, at *4 (cleaned up).

Accordingly, Choice's Motion to Strike with respect to this argument is granted and the Court strikes all sections, indicated below, of the Collins Report relating to previously undisclosed combination theories seeking to invalidate the '308 Patent on obviousness grounds.

## Conclusion

For the foregoing reasons, Choice's Motion to Strike [320] is granted. The Motion to Strike is granted with respect to the inclusion of new obviousness combination theories in the Collins Report that were not previously disclosed in Contec's Final Invalidity Contentions. Accordingly, the following paragraphs of the Collins Report are stricken: ¶¶ 146, 151, 152, 153, 154, 163, 164, 165, 168, 169, 170, 171, 179, 181, 182, 183, 186, 188, 191, 203, 204, 215, 216, 217, 218, 232, 249, 250, 251, 252, 253, 254, 267, 268, 269, 270, 271, 272, 281, 287, 288, 295, 298, 301, 304, 305, 314, 326, 331, 339, 345, 346, 362, 363, 364, 365, 377, 378, 379, 380, 389, 394, 395, 402, 405, 408, 414, 415, 427, 436, 442, 450, 455, 456, 482, 483, 484, 500, 514, 520, 521, 535, 545, 551, 564.

Dated: April 24, 2023

United States District Judge
Franklin U. Valderrama