**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> CONTEC MEDICAL SYSTEM USA INC. and CONTEC MEDICAL SYSTEMS CO., LTD., <br><br> Defendants. | No. 18-cv-00825 <br> Judge Franklin U. Valderrama |

**REDACTED MEMORANDUM OPINION AND ORDER**[1]

This is a patent lawsuit in which the Plaintiff Beijing Choice Electronic Technology Co., Ltd., (Choice) alleges that Defendants Contec Medical Systems USA, Inc., and Contec Medical Systems Co., Ltd. (collectively, Contec) infringe on Choice's U.S. Patent No. 8,639,308 (the '308 patent), which is a patent comprising a fingertip pulse oximeter and methods for updating the display mode of fingertip pulse oximeters. R. 1, Compl.[2] Before the Court is Contec's Motion for Summary Judgment on Non-Willfulness.[3] R. 346, Defs.' Mot. SJ. For the reasons stated herein, the Court

---

[1] Portions of the parties' briefs were filed under seal, as were many exhibits. The Court filed its original Order under seal so the parties could meet and confer with one another about proposed redactions. R. 408. This public version incorporates the redactions requested by the parties. R. 411.

[2] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

[3] Contec has filed two additional motions for summary judgment, on the issues of non-infringement, R. 342, and non-willfulness, R. 346. Additionally, Choice filed a motion for

grants in part and denies in part Contec's Motion for Summary Judgment on Non-Willfulness.

## Background[4]

The parties dispute the vast majority of the statements of fact provided in their respective Local Rule 56.1 statements. The Court discusses the specific disputed facts relevant to the issues raised in Contec's summary judgment motion in the analysis below. The following undisputed facts are set forth as favorably to Choice, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the Court assumes the truth of those facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

This patent infringement action arises from Contec's alleged infringement of Choice's U.S. Patent No. 8,639,308 (the '308 patent) entitled "Fingertip Oximeter and a Method of Observing a Measurement Result Thereon." Defs.' Mot. SJ at 1. The claimed subject matter of the asserted '308 patent is directed to a fingertip pulse oximeter that allows a user to manually change the orientation of a display mode and control the device's power source by pressing a button on the oximeter. *See* R. 347-3, Exh. B, '308 Patent, Abstract.

---

summary judgment on non-invalidity, R. 335. The Court is addressing each of those motions via separate orders.

[4]This factual background is taken from the parties' Rule 56.1 statements of facts and responses, including Contec's Statement of Material Facts (R. 347-1, DSOF); Choice's Response to Contec's Statement of Material Facts (R. 354, Pl.'s Resp. DSOF); Choice's Statement of Additional Material Facts (R. 355, PSOAF); and Contec's Response to Choice's Statement of Additional Material Facts (R. 367-1, Defs.' Resp. PSOAF).

Choice's '308 patent is a continuation of its parent, U.S. Patent No. 8,185,179 (the '179 patent). *See* '308 patent. The '179 patent, which is not at issue in this case, was filed in the United States in March 2008, published as U.S. Patent App. No. 2008/0242959A1 in February 2008, and issued in March 2012. *See* '179 patent. The '308 patent has an identical disclosure describing the push-button technology at issue here as the '179 patent, and the '179 patent claims priority to a Chinese patent application (the Chinese counterpart patent) filed in August 2006 and published in February 2008. *See id.*; '308 patent. The '308 patent was filed in May 2012, published in February 2013, and issued in January 2014. *See* '308 patent. In the same year the '179 patent application published, Contec filed for a patent on oximeter auto-rotation display technology. *See* U.S. Patent No. 9,474,477 (the '477 patent). Choice emphasizes the fact that Contec filed the '477 patent just a few months after the publication of the '179 patent. R. 351, Pl.'s Resp. at 5; PSOAF ¶ 4.

Choice asserted the Chinese counterpart patent, which claims similar subject matter as the '308 patent in China against another company: Yuyue. *Id.*; *see* R. 355, PSOAF ¶ 17. Although Contec disputes knowledge of the litigation and any awareness of the '308 patent, Choice maintains that Choice knew or should have known about the '308 patent based on the Choice-Yuyue litigation. *See* Pl.'s Resp. at 8.

Choice's technical expert, Dr. Jonas A. Pologe, compared Choice's products embodying the '308 patent with the Accused Products. PSOAF ¶ 10; R. 355-2, Ex. 2, Pologe Report ¶¶ 185–90. Dr. Pologe concluded that "Contec copied Choice's designs

3

and/or patented technology, based on [his] examination of the Contec Accused Products and Choice Covered Products." *Id.* ¶ 185. This conclusion is based on "[a] visual comparison of the Choice and Contec products show[ing] that they resemble each other." *Id.* ¶ 190. Contec disputes Dr. Pologe's findings, namely the conclusion that Contec literally copied the technology of Choice's (covered) products. Defs.' Resp. PSOAF ¶ 10. In support, Contec argues it developed the accused technology prior to 2008. *See* R. 347-9, Ex. H, Dep. of J. Zhang, 24:4–20; R. 347-14, Ex. M, Collins Report, ¶¶ 42, 44; R. 355, Ex. 8, Dep. of Collins, 164:1–168:24.

Regarding post-suit activity, Contec contends that it ceased the sale and manufacture of the Accused Products within two months of Choice's filing of this lawsuit. DSOF ¶¶ 19–20, 24–27; Defs.' Resp. PSOF ¶ 18; R. 355-12, Ex. 12, VHC000229–31; R. 347-10, Ex. I, Dep. of J. Hu, 28:3–29:22 (stating Contec stopped selling the Accused Products in the United States in February or March 2018); Dep. of J. Zhang, 97:18–98:2 (stating Contec stopped selling the Accused Products in the United States in mid-March 2018). But Choice also points out that it was not until October 2018 that Contec explicitly represented to the Court that it stopped selling and manufacturing the Accused Products. Pl.'s Resp. DSOF ¶ 19; *see* R. 112, Joint. Mot. Withdrawal M. Prelim. Inj.

4

██████████████████████████████████████████████

██████████████████████████████████████

Now before the Court is Contec's Motion for Summary Judgment of Non-Willfulness.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

5

**Analysis**

Contec moves for summary judgment against Choice's claim of willful infringement. Defs.' Mot. SJ at 1. As discussed below, the Court divides its analysis into pre-suit willfulness and post-suit willfulness.

I. **Willful Infringement**

Willful infringement of a patent depends on the "[t]he subjective willfulness of a patent infringer, intentional or knowing." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Group, LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) (quoting *jHalo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016)). In particular, "under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *SRI Int'l, Inc. v. Cisco Sys. (SRI II), Inc.*, 14 F.4th 1323, 1329–30 (Fed. Cir. 2021). Although "wanton, malicious, and bad-faith behavior" is likely willful, such "egregious" conduct is not the threshold for willfulness. *Halo*, 579 U.S. at 103–04; *see also SRI II*, 14 F.4th at 1330. This is because the "wanton, malicious, and bad-faith" language "from *Halo* refers to 'conduct warranting enhanced damages,' not conduct warranting a finding of willfulness" because "willfulness is a *component* of enhancement [of damages]." *Id.* (emphasis added).

Willfulness is a question of fact "entire[ly] . . . to be decided by the jury." *Exmark*, 879 F.3d at 1353. This is not to mean that any willfulness question automatically skips summary judgment and goes to the jury; rather, post-*Halo*, the willfulness inquiry simply does not involve any questions of law exclusively reserved for the court. *Id.* (noting "the district court no longer determines as a threshold matter whether the accused infringer's defenses are objectively reasonable"); *see SiOnyx,*

*LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 610 (D. Mass. 2018) (citing *Exmark* and granting-in-part defendants' motion for summary judgment for non-willfulness). Accordingly, willfulness depends on the subjective state of mind of the accused infringer, where "'culpability is generally measured against the knowledge of the actor at the time of the challenged conduct.'" *SRI Int'l, Inc. v. Cisco Sys., Inc.* (*SRI I*), 930 F.3d 1295, 1309 (Fed. Cir. 2019) (quoting *Halo*, 579 U.S. at 105). The Federal Circuit has also held that "proof that the defendant acted despite a risk of infringement that was 'either known or *so obvious that it should have been known to the accused infringer,*'—can support an award of enhanced damages." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (quoting *Halo*, 579 U.S. at 93) (emphasis added).

Evidence that may support a finding of willful infringement includes continued infringement and deliberate copying. *See Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 2018 WL 4742066, at *15 (N.D. Ill. Oct. 2, 2018); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340–41 (Fed. Cir. 2016); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1348–49 (Fed. Cir. 2004). Most importantly, willfulness requires *knowledge* of the patent itself. *See SRI II*, 14 F.4th at 1328 (refusing to "disturb [its previous] holding that there was no willful infringement before" knowledge of the patent); *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a *patent*, the patent must exist and one must have knowledge of it." (emphasis in original)).

7

A party thus cannot willfully infringe a patent "prior to [] notice thereof," whether such notice is a letter, independent knowledge, or a lawsuit against the party itself. *SRI I*, 930 F.3d at 1308. Courts routinely consider pre- and post-notice analyses separately because the nature of, for example, pre-*suit* notice inevitably differs from post-suit notice. *See, e.g., id.* (analyzing pre- and post-notice separately, where a letter operated as the "notice"); *Gen. Access Sols., Ltd. v. Virgin Mobile USA, L.P. et al*, 2:20-cv-00007, Dkt. No. 367 (E.D. Tex. Aug. 11, 2021) (granting pre-suit non-willfulness); *CUPP Cybersecurity LLC v. Trend Micro Inc.*, No. 3:18-cv-01251, 2023 U.S. Dist. Ct. Motions LEXIS 34225 (N.D. Tex. Jan. 18, 2023) (same); *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 567–569 (D. Del. 2014) (analyzing pre-suit and post-suit willfulness separately).

## II. Discussion

For the reasons discussed below, the Court grants Contec's summary judgment motion for non-willfulness as to Contec's pre-suit conduct, but denies the motion as to Contec's post-suit conduct. As a preliminary matter, Choice contends it is inappropriate for "Contec [to] ask[] the Court to separately grant summary judgment for pre-suit willful infringement and post-suit willful infringement." Pl.'s Resp. at 9. Although Choice argues Contec's request is "[w]ithout any supporting case law for this distinction," Choice too failed to cite any supporting case law precluding the Court from making such a distinction. *Id.* In the absence of binding case law from Choice and given the fact that numerous courts properly treat pre- and post-suit willfulness separately, *see Gen. Access Sols.*, 2:20-cv-00007, Dkt. No. 367; *CUPP*

8

*Cybersecurity* 2023 U.S. Dist. Ct. Motions LEXIS 34225; *Robocast*, 39 F. Supp. 3d at 567–56, the Court will address the two separately.

### A. Pre-Suit Willfulness

Although a willfulness inquiry involves assessing the "totality of the circumstances," *Medline Indus., Inc. v. C.R. Bard, Inc.*, 2019 WL 3562660, at *2 (N.D. Ill. Aug. 2, 2019), willful infringement nonetheless requires knowledge of the asserted patent itself, *see SRI II*, 14 F.4th at 1328. Here, there is no genuine dispute as to whether Contec knew of the '308 patent before January 2018. Choice's daisy chain of inferences is legally insufficient to show willfulness, and even after resolving any factual disputes in Choice's favor, no reasonable jury could find in Choice's favor.

Contec insists it "did not know of the ['308] patent until it was served with the complaint in this action in [January] 2018," and such lack of knowledge "is fatal to any claim of willfulness based on Contec's pre-suit conduct." R. 347, Defs.' Memo. SJ at 1; DSOF ¶¶ 6–9; Dep. of J. Zhang, 147:8–21; Dep. of J. Hu, 82:5–85:10. Moreover, Contec contends that Choice's copying allegations related to Choice's products embodying the '308 patent are irrelevant based on Contec's lack of knowledge of the '308 patent and Contec's independent development of the accused technology. Defs.' Memo. SJ at 6–7; DSOF ¶¶ 13, 15.

Choice responds that Contec "knew or should have known" about the '308 patent based on based on Contec's USPTO filings, Contec's development of non-infringing auto-rotation technology, a comparison of the Accused Products with Choice's products embodying the '308 patent, and Choice's "very public" patent

9

litigation in China against Yuyue. *See* Pl.'s Resp. at 1, 8–9; Pl.'s Resp. DSOF ¶¶ 1–10, 14, 16, 17, 18. Choice thus posits Contec had ample knowledge of the '308 patent based on the totality of these circumstances. *See* Pl.'s Resp. at 9.

It is undisputed that Contec's '477 patent (covering auto-rotation technology), filed in September 2012, cites Choice's '179 patent, the parent of the asserted '308 patent. DSOF ¶ 10; PSOAF ¶ 9; *see also* '477 patent. It is also undisputed that the '179 patent and the '308 patent have identical disclosures at least related to the push-button (i.e., manual) display rotation technology, albeit with different claims. *See* '179 patent; '308 patent. But, as Contect points out, knowledge of the *unasserted parent* patent is insufficient to show knowledge of the *asserted* patent. Defs.' Memo. SJ at 4 (citing *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 4427490, at *5 (N.D. Cal. Aug. 22, 2016); *Finjan, Inc. v. Juniper Networks, Inc.*, 2018 WL 905909, at *3 (N.D. Cal. Feb. 14, 2018)). Moreover, when Contec filed the '477 patent in 2012, Choice's application for the '308 patent was not even published—it did not publish until February 2013 and did not issue until January 2014. *See* '308 patent. What's more, unrebutted deposition testimony of Contec witnesses establishes that no one at Contec knew about the '308 patent until Choice's filing of this lawsuit. DSOF ¶ 7; Dep. of J. Zhang, 147:18–21; Dep. of J. Hu, 82:21–84:1.

To bolster its file history argument, Choice relies on purportedly suspicious timing of Contec's filing of its '477 patent application and development of its own display rotation technology. The way Choice sees it, Contec's filing of the '477 patent application a mere six months after the '179 patent issuance suggests Contec

10

attempted to "carve[] out just the [Choice-]patented push-button display-change feature" and "is strong evidence that Contec knew about Choice's patent and was designing around it." Pl.'s Resp. at 4. Crucially, however, this argument fails to consider the fact that the '308 patent *did not exist* when Contec filed the '477 patent application. Thus, there was no '308 patent for Contec to design around. *See State Indus.*, 751 F.2d at 1236 ("To willfully infringe a patent, *the patent must exist and one must have knowledge of it*." (emphasis added)).

Choice maintains that Contec's development of display rotation technologies nevertheless creates a triable issue of fact. Pl.'s Resp. 4–5. That is, Choice argues Contec—shortly after Choice's '179 patent application published in February 2008—redesigned its oximeters "to be receptive of an accelerometer to facilitate auto-rotation." Pl.'s Resp. at 5; PSOAF ¶ 6. Contec then "appl[ied] to patent the [auto-rotation] redesign [in September 2012] after Choice's parent ['179] patent was issued [in March 2012, which] further suggests that Contec's knowledge of Choice's patent prompted the redesign." Pl.'s Resp. at 5. Again, the '308 patent did not exist then. *See* '308 patent. Further, even if the '179 patent prompted the redesign, that patent is not the one at issue here. *See Radware*, 2016 WL 4427490, at *5 (awareness of a parent patent "does not support a finding of willfulness").

Contec's own prior independent development of auto-rotation and manual rotation technologies forecloses any dispute about Contec's supposed design-around, much less copying, of Choice's manual rotation technology. *See* DSOF ¶ 7. Dr. Pologe concluded that "Contec developed *a technology* to rotate the display of the fingertip

11

pulse oximeter around 2008 or 2009 and later implemented the feature in model CMS50H." Pologe Report ¶ 191 (emphasis added). Choice contends that this conclusion from Pologe's report refers to Contec's auto-rotation technology, not the accused manual rotation technology. Pl.'s Resp. at 7; PSOAF ¶ 13. Contec disagrees, stating it is not clear to which technology paragraph 191 refers. Resp. to PSOAF ¶ 13. No matter, because there is no genuine dispute whether Contec developed the manual rotation technology before 2008, 2012 (when Contec filed the '477 patent), or 2014 (when the '308 Patent issued) for that matter. DSOF ¶ 15. For example, Contec's CMS50C oximeter had the functionality of "[manually] changing the display orientation by pressing the power button," which Contec incorporated into the CMS50C "around . . . 2006, or towards the end of the year 2005." Dep. of J. Zhang, 24:4–20. Additionally, Contec's expert, Dr. John Collins, was not certain that Contec developed the CMS50C oximeter in 2006, but nonetheless determined such a timeline "would make sense" given his review of deposition testimony, Contec's website, and translations[5] of Contec's relevant files. Dep. of Collins, 164:1–168:24; *see also* Collins Report ¶¶ 42, 44. Finally, Dr. Pologe himself stated that "Contec was in possession of the auto-rotation technology and attempted to commercialize it as early as 2008/2009, but ***switched back*** to the patented [manual rotation] feature." Pologe

---

[5]Choice harangues Dr. Collins' reliance on "secondhand 'review' of the Chinese-language 'product development file' as orally summarized by Contec counsel." PSOAF ¶ 11. However, Choice's own expert, Dr. Pologe, similarly relied on counsel's translations of Chinese-language documents and testified that reliance on counsel's translation was reasonable. Defs.' Resp. PSOAF ¶ 11 (citing R. 354-9, Dep. of Pologe, at 156:19–159:2. Neither party provides authority attacking the propriety of such reliance on translations from counsel. The Court will thus accept both experts' respective understandings of the relied-upon Chinese-language documents as translated by respective counsel.

Report ¶ 195 (emphasis added). Thus, Contec must have developed the manual rotation feature before 2008 or 2009 in order to "switch back" to it. Choice's dispute as to the sufficiency of evidence supporting Contec's prior development of the manual rotation technology thus rings hollow. Pl.'s Resp. DSOF ¶ 15.

Even assuming Contec did copy Choice's products embodying the '308 patent, this is legally insufficient to form a basis for willful infringement of the '308 patent. *See, e.g.*, Pologe Report ¶¶ 185, 187, 189–190 (concluding Contec copied the technology of Choice's covered products). Copying a covered product cannot demonstrate willful infringement absent knowledge of the covering patent. *See State Indus.*, 751 F.2d at 1236 (rejecting copying allegations as supporting willful infringement because "[t]o willfully infringe a patent . . . one must have knowledge of it"); *Adidas Am., Inc. v. Skechers USA, Inc.*, 2017 WL 2543811, *3–4 (D. Or. Jun. 12, 2017) (dismissing claims for willful infringement, despite evidence of copying, because defendant lacked knowledge of the asserted patents). Indeed, it is undisputed that none of Choice's covered products indicated in any way the '308 patent covered them (e.g., via marking). DSOF ¶ 8. Thus, Contec's supposed knowledge of the '308 patent cannot be based on the covered products alone. Additionally, as discussed above, unrebutted evidence shows Contec did not have any actual knowledge of the '308 patent. At best, Choice makes attorney argument related to the "self-serving" nature of Contec's witness' testimony and points to a superposition of attenuated inferences, which, even when resolving the disputes in favor of Choice, do not support a finding of willful infringement. Pl.'s Resp. at 6–7; *see Ferring B.V. v. Barr Labs.*,

*Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney argument are insufficient to overcome a motion for summary judgment"); *see also Larry Harmon Pictures Corp. v. Williams Rest. Corp.*, 929 F.2d 662, 663 n.1 (Fed. Cir. 1991) (arguments that affidavit in support of motion for summary judgment was biased, self-serving, and suspect for many reasons could not create a genuine issue of material fact in the absence of evidence conflicting with that affidavit).

Choice further relies on its allegedly "very public" litigation in China against Yuyue related to the Chinese counterpart patent as yet another basis to "infer" Contec's knowledge of the American '308 patent. Pl.'s Resp. at 1, 5, 8. Regardless of whether Yuyue is a competitor of Contec in the fingertip pulse oximeter market, Contec disputes any awareness of Choice's litigation in China against Yuyue. Defs.' Resp. PSOAF ¶ 17; Dep. of J. Hu, 126:12–127:6 (asserting Contec had no knowledge of the Chinese litigation); Pl.'s Resp. DSOF ¶¶ 11–12 (Choice disputes Contec's lack of knowledge, with no corresponding evidentiary support for such dispute). The record is devoid of any nexus between the Choice-Yuyue litigation and the existence of the '308 patent beyond the '308 patent's priority claim to the asserted Chinese counterpart patent there. That is, even if Contec knew about the Chinese litigation and/or the Chinese counterpart patent before the instant lawsuit (or the litigation was so public that it was "so obvious that it should have been known" to Contec, *Halo*, 579 U.S. at 93), Choice fails to demonstrate how Contec would therefore infer the existence the '308 patent. *See, e.g.*, *Finjan*, 2018 WL 905909, at *4 (knowledge of an *entire* patent portfolio does not suffice for willfulness). Moreover, even a defendant's

actual "knowledge of the existence of related foreign counterpart patents to the patents-in-suit (and prolonged efforts to invalidate those patents) or of primers that were eventually claimed in the patents-in-suit, [cannot] render the record adequate to support a finding of willful infringement." *bioMerieux, S.A. v. Hologic, Inc.*, 2020 WL 759546, at *12 (D. Del. Feb. 7, 2020).

The record thus demonstrates there is no genuine dispute as to any material fact related to Contec's alleged pre-suit willfulness. The inferences purportedly showing Contec's knowledge of the '308 patent individually and collectively fail to generate a triable issue of fact for the jury. Willful infringement requires, at minimum, "deliberate or intentional infringement" of the patent, and there exists no genuine dispute that Contec had pre-suit knowledge of the '308 patent, much less deliberately infringed it. *SRI II*, 14 F.4th at 1330. Accordingly, the Court grants Contec's motion for summary judgment as to pre-suit willfulness. It turns next to post-suit willfulness.

### B. Post-Suit Willfulness

Because there exist genuine issues of material fact related to Contec's alleged post-suit willfulness, the Court denies Contec's motion for summary judgment as to post-suit willfulness.

As an initial matter, Contec correctly notes that Federal Rule of Evidence 407 prohibits Choice from using Contec's switch to the non-infringing auto-rotation display to prove willfulness. Defs.' Memo. SJ at 10–11; R. 367, Defs.' Reply at 2, 11; *see* Fed. R. Evid. 407. Federal Rule of Evidence 407 prohibits admission of subsequent

15

remedial measures to prove culpability. Fed. R. Evid. 407. Choice not only fails to provide any authority to the contrary, but also did not even address Contec's Rule 407 arguments, and therefore has waived any response. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . .results in waiver."); *See Lewis v. Mills*, 677 F.3d 324, 332 (7th Cir. 2012) ("Unsupported and underdeveloped arguments are waived.") (cleaned up).[6] Thus, the Court will not consider Contec's post-suit remedial measures as proof of willfulness (i.e., culpability) because such evidence would not be admissible for that purpose. *See* Fed. R. Evid. 407; Fed. R. Civ. P. 56(c)(2); *see also Malibu Media, LLC v. Doe*, 2019 WL 8301066, at *2 n.3 (N.D. Ill. June 5, 2019) ("cessation of infringing activity [can]not be used to prove culpability"); *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72, slip op. at 51 (E.D. Tex. Oct. 5, 2010) (same; but denying defendants' motion *in limine* related to Rule 407 because the Rule does not exclude evidence used to show control).

Contec maintains that it ceased the sale and manufacture of the Accused Products within two months of Choice's filing of this lawsuit. DSOF ¶ 19; Defs.' Resp. PSOF ¶ 18; R. 355-12, Ex. 12, VHC000229–31. Such cessation included modifying some of the accused oximeters to use an accelerometer, instead of a push-button, to update an oximeter's display such that the modified product indisputably does not infringe the '308 patent. DSOF ¶¶ 19–20, 24–27; *see* Dep. of J. Hu, 28:3-29:22 (stating Contec stopped selling the Accused Products in the United States in February or

---

[6]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

16

March 2018); Dep. of J. Zhang, 97:18–98:2 (stating Contec stopped selling the Accused Products in the United States in mid-March 2018). Choice disputes such a telling of the facts because it was not until October 2018 that Contec explicitly represented to the Court that it stopped selling and manufacturing the Accused Products. Pl.'s Resp. DSOF ¶ 19; *see* Joint. M. Withdrawal M. Prelim. Inj. Additionally, Contec at least offered for sale one of the Accused Products in April 2018. PSOAF ¶ 18, Ex. 12, VHC000223–25.

Choice also argues that the *speed* with which Contec was able to transition to accused devices to incorporate the non-infringing auto-rotation feature "reinforces the inference . . . that the auto-rotation feature was precisely developed to get around the asserted patent." Pl.'s Resp. at 11–12, 13 n.3. Choice cites no authority in support of this argument, but the Court understands it from a practical standpoint. As another practical matter, however, because the Court is granting summary judgment as to pre-suit willfulness based at least on Contec's lack of knowledge of the '308 patent, Choice's speed argument is inapposite since it requires Contec's pre-suit willfulness and/or knowledge as a premise. Moreover, as discussed above, the record clearly establishes that Contec's developed its auto-rotation technology before the '308 patent issued. *See SRI I*, 930 F.3d at 1309 ("'culpability is generally measured against the knowledge of the actor at the time of the challenged conduct'" (quoting *Halo*, 579 U.S. at 93)). And, as stated above, the Court will not consider remedial measures to prove culpability under Federal Rule of Evidence 407.

17

However, even a few months of continued infringement is probative of a finding of willful infringement. *See Halo Creative*, 2018 WL 4742066, at *15. Here, although Contec represents that it ceased sales within weeks of Choice's filing of the lawsuit, Contec did not provide formal notice of such cessation until October 2018. Additionally, not all of Contec's emails to customers indicate it ceased selling the accused products. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The Court must resolve this factual dispute in favor of Choice and interpret the April email to be an offer for sale. *See* 35 U.S.C. § 271(a) ("whoever without authority . . . offers to sell . . . within the United States . . . any patented invention during the term of the patent therefor, infringes the patent"). Thus, there is a genuine dispute as to when Contec ceased sale

18

and/or offer for sale of the accused products, which goes directly to the "deliberate" nature of any alleged post-suit infringement.

Finally, the parties quibble about the reasonableness of Contec's asserted non-infringement and invalidity defenses. *See* Defs.' Memo. SJ at 12; Pl.'s Resp. at 13; Defs.' Reply at 14–15. While a defendant's assertion of reasonable defenses can help support a finding of non-willfulness, this does not resolve the questions related to Contec's post-suit conduct related to cessation of selling and offering for sale the accused products. *Cf. Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc.*, 387 F. Supp. 3d 404, 422 (D. Del. 2018), *aff'd*, 943 F.3d 929 (Fed. Cir. 2019) (granting summary judgment of no willful infringement where the defendant "asserted reasonable defenses"). Thus, a jury is entitled to draw inferences related to Contec's state of mind based at least on the reasonableness of its invalidity theories.

Accordingly, there exist genuine disputes of material facts regarding Contec's post-suit conduct as it relates to any willful infringement of the '308 patent. The Court therefore denies Contec's motion for summary judgment as to post-suit willfulness.

## Conclusion

Viewing the facts in light most favorable to Choice, there is no genuine dispute of material fact regarding Contec's alleged pre-suit willfulness; however, there are questions of fact regarding Contec's alleged post-suit willfulness. Accordingly, Contec's Motion for Summary Judgment on Non-Willfulness [346] is granted in part

19

and denied in part. It is granted as to Contec's pre-suit willfulness and denied as to Contec's post-suit willfulness.

Dated: March 31, 2024
Redacted: April 23, 2024

_____
United States District Judge
Franklin U. Valderrama