UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEIJING CHOICE ELECTRONIC TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> CONTEC MEDICAL SYSTEM USA INC. and CONTEC MEDICAL SYSTEMS CO., LTD., <br><br> Defendants. | No. 18-cv-00825 <br> Judge Franklin U. Valderrama |

**REDACTED MEMORANDUM OPINION AND ORDER**[1]

This is a patent lawsuit in which the Plaintiff Beijing Choice Electronic Technology Co., Ltd., (Choice) alleges that Defendants Contec Medical Systems USA, Inc., and Contec Medical Systems Co., Ltd. (collectively, Contec) infringe on Choice's U.S. Patent No. 8,639,308 (the '308 patent), which is a patent comprising a fingertip pulse oximeter and methods for updating the display mode of fingertip pulse oximeters. R. 1, Compl.[2] Before the Court is Contec's Motion for Summary Judgment that Choice is Not Entitled To Price Erosion Damages.[3] R. 339, Defs.' Mot. SJ. For

---

[1] Portions of the parties' briefs were filed under seal, as were many exhibits. The Court filed its original Order under seal so the parties could meet and confer with one another about proposed redactions. R. 410. This public version incorporates the redactions requested by the parties. R. 411.

[2] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

[3] Contec has filed two additional motions for summary judgment, on the issues of non-infringement, R. 342, and non-willfulness, R. 346. Additionally, Choice filed a motion for

the reasons that follow, the Court denies Contec's Motion for Summary Judgment on Price Erosion Damages.

## Background[4]

The parties dispute some of the statements of fact provided in their respective Local Rule 56.1 statements. The Court discusses the specific disputed facts relevant to the issues raised in Contec's summary judgment motion in the analysis below. The following undisputed facts are set forth as favorably to Choice, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the Court assumes the truth of those facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

On January 31, 2018, Choice filed this patent infringement action against Contec. DSOF ¶ 1. This patent infringement action arises from Contec's alleged infringement of the '308 patent. *Id.* ¶ 2. The '308 patent was issued January 28, 2014. *Id.* ¶ 3. The subject matter of the asserted '308 patent is directed to a fingertip pulse oximeter that allows the user to press a single button to power on the device and change between display modes. R. 352, Pl.'s Resp. at 2. On March 31, 2024, the Court denied Contec's Motion for Summary Judgment of Non-Infringement, concluding

---

summary judgment on non-invalidity, R. 335. The Court addresses each of those motions via separate orders.

[4]This factual background is derived from the parties' Rule 56.1 statements of facts and responses, including Contec's Statement of Facts (R. 340-1, DSOF); Choice's Response to Contec's Statement of Facts (R. 356, Pl.'s Resp. DSOF); Choice's Statement of Additional Facts (R. 357, PSOAF); and Contec's Response to Choice's Statement of Additional Fact (R. 365-1, Defs.' Resp. PSOAF).

there was a fact dispute on whether Choice can prove Contec directly and indirectly infringed on all the limitations of the Asserted Claims of the '308 patent.

Since 2011, Choice has made and sold in the United States fingertip pulse oximeters. PSOAF ¶ 2. Choice primarily sells its products practicing the '308 patent to national retailers. *Id.* ¶¶ 10–11. Contec began selling its fingertip pulse oximeters (Accused Products) in 2012. *Id.* ¶ 7. The Accused Products include Contec models CMS50E, CMS50H, CMS50N, and CMS50QB. *Id.* ¶ 8. Choice and Contec competed for sales of the fingertip pulse oximeters since at least January 2014. DSOF ¶ 4. Because national retailers typically offer one or two models of fingertip pulse oximeters in-store, the national retailer market was essentially a two-player market during the infringement period.[5] PSOAF ¶¶ 12–13. Choice alleges that Contec's fingertip pulse oximeters infringe the '308 patent. DSOF ¶ 5.

However, Choice did not directly notify Contec of its infringement until this lawsuit was filed on January 31, 2018. Pl.'s Resp. DSOF ¶ 7. Further, it is undisputed that Choice did not mark its products embodying the '308 patent, namely, Choice's models MD300C20, MD300C29, MD300CN310, and MD300CN350R. *Id.* ¶ 9.

The parties dispute over when Contec ceased the making and selling of the Accused Products. Pl.'s Resp. DSOF ¶ 11. Contec asserts that it stopped manufacturing and selling the Accused Products within two months of Choice filing this lawsuit on January 31, 3018. DSOF ¶ 11. Choice contends, however, that because

---

[5]Contec disputes the national retail fingertip pulse oximeter marketplace is a two-player marketplace. Defs.' Resp. PSOAF ¶ 12. The Court, as it must, accepts the non-movant Choice's version of events, since it is supported by evidence. PSOAF ¶¶ 12–13.

3

Contec did not notify the Court that it had stopped the making and selling of the Accused Products until October 18, 2018, that is the date the alleged infringement ceased. Pl.'s Resp. DSOF ¶ 11.

Further, it is undisputed that Contec sold 13,659 allegedly infringing products after this lawsuit was filed, for a total revenue of ▮▮▮▮▮▮. Pl.'s Resp. DSOF ¶ 14. However, under the theory of price-erosion damages, Choice asserts it would have received ▮▮▮▮▮▮▮▮▮ in revenue during the post-notice damages period between January 31, 2018, and December 31, 2024, but for Contec's alleged infringement. *Id.* ¶¶ 16–17.

Before the Court is Contec's Motion for Summary Judgment that Choice is Not Entitled to Price Erosion Damages.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

Choice argues it is entitled to price erosion damages for Contec's alleged infringement, which took place during both the pre- and post-notice period, under *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348 (Fed. Cir. 2013). Pl.'s Resp. at 1. Choice reasons that had Contec not infringed, Choice would have been able to charge a higher price to suppliers during the post-notice damages period. *Id.* at 4. Contec argues that Choice cannot seek price erosion damages based on alleged infringement that occurred before this lawsuit was filed, because doing so is contrary to the plain language of the patent marking statute, 35 U.S.C. § 287(a), as well as Supreme Court and Federal Circuit precedent. R. 340, Defs.' Memo. SJ at 6–7. The Court finds that Choice has the better of the argument and Choice is not barred from receiving post-notice price erosion damages caused by both pre- and post-notice infringement.

Price erosion damages are a form of legally compensable damages caused by infringement leading to lost profits. *Power Integrations*, 711 F.3d at 1378. "For price

erosion damages the patentee must show that, but for the infringement, it would have been able to charge and receive a higher price." *Vulcan Eng'g Co., Inc. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002). Notably, "[w]hether lost profits are legally compensable in a particular situation is a question of law[.]" *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004).

Contec's argument that Choice is not entitled to price erosion damages is premised on the marking statute. That statute states:

> In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered *only for infringement occurring after such notice*. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a) (emphasis added).

"The patent marking statute limits recoverable damages where a patentee fails to mark her patented products." *Power Integrations*, 711 F.3d at 1378. "The statute provides two ways to provide notice: a patentee can (1) provide actual notice; or (2) provide constructive notice by affixing the word 'patent' or the abbreviation 'pat.', together with the number of the patent on patented articles sold by the patentee or its licensees." *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 2017 WL 2651618, at *6 (E.D. Tex. June 20, 2017), *report and recommendation adopted,* No. 2017 WL 4693971 (E.D. Tex. July 31, 2017) (cleaned up).[6] "Where a patentee does not

---

[6]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

6

appropriately mark her products, she may not recover damages for infringement occurring before notice to the infringer." *Power Integrations*, 711 F.3d at 1378.

Contec asserts that Choice improperly seeks more than ▮▮▮▮▮▮▮ in price erosion damages, resulting from Contec's alleged infringement before Choice filed this lawsuit. Defs.' Memo. SJ at 6–7. Choice's damages expert, Michal Malkiewicz, bases his post-notice lost profits calculations from January 31, 2018 to December 31, 2024 on both pre- and post-notice infringement spanning from January 28, 2014 to October 18, 2018. Pl.'s Resp. DSOF ¶¶ 28, 30; PSOAF ¶ 25. At bottom, Contec contends that Choice may only consider Contec's alleged post-notice infringement in calculating its post-notice price erosion damages. Defs.' Memo. SJ at 11–12. Because Malkiewicz's analysis does not distinguish between the alleged pre- and post-notice infringement, Contec insists that Choice cannot establish the required "but-for" causation requirement and violates 35 U.S.C. § 287(a). *Id.* at 13–14.

On its face, Contec's interpretation of the marking statute that Choice cannot recover for any lost profits resulting from infringement prior to Choice providing notice is appealing. However, as Choice correctly notes, the Court is bound by the Federal Circuit's decision in *Power Integrations*, which held that courts may consider pre-notice infringement to determine post-notice damages. Pl.'s Resp. at 8 (citing *Power Integrations*, 711 F.3d at 1379–80).

In *Power Integrations*, the defendant moved for partial summary judgment, arguing that the plaintiff had failed to mark its patented products in accordance with 35 U.S.C. § 287 and therefore was precluded from any damages preceding the notice

7

date. 711 F.3d at 1377. The district court agreed, and in so doing, "prohibited Power Integrations from introducing evidence that Fairchild's pre-notice infringing sales had depressed the market price of the patented products, thus reducing Power Integrations' profits on sales after the notice date." *Id.* at 1378. On appeal, Power Integrations argued that the district court erred because "while the marking statute precludes recovery of damages for infringement before the notice date, the statute does not require courts to ignore pre-notice price erosion when calculating damages for post-notice infringement." *Id.* Power Integrations suggested that courts "when assessing compensable price erosion for post-notice infringements, . . . must assess market conditions at the time [the] infringing products first entered the market." *Id.*

      The Federal Circuit agreed with Power Integrations. While maintaining that a patentee that fails to mark its products cannot recover for pre-notice infringement, the Federal Circuit explained the marking statute only "provides a temporal limitation on *damages* for infringement." *Id.* at 1378–79. The marking statute still "refers to pre-notice infringing activity as 'infringement.'" *Id.* at 1379 (citing 35 U.S.C. § 271(a)). Further, the Federal Circuit clarified that an "infringer's pre-notice infringing activity is part of her whole infringement" and courts must consider the whole infringement in calculating damages for post-notice damages. *Id.* Thus, the Federal Circuit held that "a price erosion analysis relating to damages arising from post-notice infringement must measure price changes against *infringement-free* market conditions." *Id.* at 1379 (emphasis in original). The proper starting point of

8

such a price erosion analysis, continued the Federal Circuit is the date of first infringement. *Id*. at 1379–80.

The Court finds *Power Integrations* dispositive. Here, as in *Power Integrations*, Choice seeks to use pre-notice market data to show that but for Contec's infringement, Choice would have received more than ▇▇▇▇▇ in additional revenue in the post-notice damages period. Moreover, Choice does not seek to recover damages from infringement occurring pre-notice. Pl.'s Resp. DSOF ¶ 30.

Contec contends that *Power Integrations* "is a limited evidentiary ruling" that is irrelevant to this case. Defs.' Memo. SJ at 14. The Court disagrees. Though the Federal Circuit reversed the district court's decision excluding evidence of pre-notice market data, the Federal Circuit held that when there is post-notice infringement, pre-notice infringement can be used in calculating the lost profits from post-notice infringement. *Power Integrations*, 711 F.3d at 1379. Moreover, Contec fails to explain how the Court can practically distinguish *Power Integrations* from this case.

As Choice points out in response, all but one of the cases Contec cites in support of its argument that Choice's reading contravenes the marking statute deal with issues other than price erosion damages. Pl.'s Resp. at 11 (citing Defs.' Memo. SJ at 9). And the Court agrees with Choice that the only price erosion damages case cited by Contec, *Morpho Detection, Inc. v. Smiths Detection, Inc.*, 2012 WL 12893869, at \*2–5 (E.D. Va. Dec. 3, 2012), is unavailing. In *Morpho Detection*, the district court opined that the patentee should not be able to recreate a hypothetical, but-for infringement market based on pre-notice infringement to calculate post-notice lost

9

profits. Contec overlooks the fact that *Morpho Detection* was decided prior to *Power Integration*, which this Court is bound to follow. Additionally, this case is distinguishable from *Morpho Detection* because in *Morpho Detection*, the patentee was purely relying on non-existent, hypothetical post-notice sales, whereas Choice actually sold its patented products post-notice. *Id.* at *5; Pl.'s Resp. DSOF ¶ 22.

In short, if the Court were writing on a blank slate, perhaps Contec's text-based argument would carry the day. But the Court is bound to follow Federal Circuit precedent, accordingly, the Court must decline Contec's invitation to disregard *Power Integrations*.

Finally, both parties raise the issue of "but-for" causation. Contec asserts that Choice cannot satisfy the but-for causation requirement as a matter of law because Choice bases its post-notice damages on pre-notice infringement. Defs.' Memo. SJ at 11. However, as discussed above, the Court finds that Choice may rely on pre-notice infringement to calculate post-notice damages. In its response, Choice argues that "but-for" causation is a jury issue, and the Court agrees. Pl.'s Resp. at 14–15; *see e.g.*, *California Fed. Bank v. United States*, 295 F.3d 1263, 1270 (Fed. Cir. 2005) (explaining that causation is a question of fact); *Rodriguez v. Glock, Inc.*, 28 F. Supp. 2d 1064, 1071 (N.D. Ill. 1998) (stating "causation in fact is generally a question for the jury"); *Versata Software, Inc. v. SAP America, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1264–65 (Fed. Cir. 2013) (finding the jury's award of lost profits for infringement was supported by sufficient evidence). Because Choice has provided support for its "but for causation" and damages calculations in Malkiewicz's Damages

10

Expert Report and in his deposition testimony, the Court finds there to be at least a dispute of material fact suitable for a jury.

## Conclusion

As a matter of law under *Power Integrations*, Choice may rely on both pre- and post-notice infringement data to calculate post-notice price erosion damages. Furthermore, it is for a jury to determine the issue of "but-for" causation. For the foregoing reasons, Contec's Motion for Summary Judgment that the Plaintiff is Not Entitled Price Erosion Damages [339] is denied.

Dated: April 22, 2024
Redacted: April 23, 2024

United States District Judge
Franklin U. Valderrama